## Rice *versus* The Commonwealth.

1. In a prosecution for seduction under promise of marriage, proof of such mere social attentions upon the part of the defendant to the prosecutrix, as accompanying her from church, waiting upon her home, calling upon her at the house of her parents, and there waiting upon her now and then for two years, is not sufficient evidence to corroborate the prosecutrix's testimony to the effect that a promise of marriage was made to her, and will not warrant the jury in finding that fact in the affirmative.

2. Where in such case there is testimony that the defendant called upon the prosecutrix's mother and expressed contrition for what he had done, and a willingness to make amends by marrying the prosecutrix after a time, this is not evidence from which a jury could safely find a previous promise to marry.

3. The failure of the Commonwealth to call the father of the prosecutrix, who was present at the . above mentioned conversation, to testify to the particulars thereof, was a circumstance which would have justified an inference unfavorable to the prosecution, and the court would have been warranted in so instructing the jury.

4. In the case above stated, testimony of a conversation between the defendant and a third person, in the course of which the defendant said in reference to the matter in hand that "he would give two hundred dollars to settle it, and no more, that he was guilty of the crime," was no evidence of a promise of marriage. The admission must be construed to refer to the illicit intercourse with prosecutrix.

5. The evidence in this case held not to warrant a conviction for se-duction under promise of marriage, but that a conviction for fornication, &c. might be sustained under the same indictment.

February 23d 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Quarter Sessions of *Lackawanna county :* Of July Term 1882, No. 230.

Indictment of Frederick Rice, for the seduction, under an alleged promise of marriage, of Margaret Robertson, under twenty-one years of age.

At the first trial of the case a verdict of guilty was entered, and the judgment thereon was reversed on writ of error, and the record remanded for further proceedings.

At the second trial, before HANDLEY, P. J., the testimony in the case was substantially the same as that in the former case, reported in 4 Outerbridge 28, to which reference is here made. The new testimony, so far as material, is stated in the opinion of this court.

Verdict, guilty in manner and form as charged in the indictment and sentence imposed. The defendant, having obtained a special allocatur, took this writ of error, assigning for error,

[Rice *v.* Commonwealth.]

inter alia, the portion of the charge of the court set forth below in the opinion of this court.

*Cornelius Smith,* for the plaintiff in error.

*H. M. Hannah* (*J. F. Connolly* with him), for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, April 2d, 1883.

When this case was here upon a former writ of error we said pointedly that "the mere evidence of his (plaintiff's) attentions was not sufficient to carry the case to the jury." In other words, they were not such attentions as would justify a jury in presuming a promise of marriage, or would amount to such corroboration of the prosecutrix as the Act of Assembly requires in cases of seduction. Upon a state of facts in no essential features differing from those of the former trial, the learned judge below charged the jury (see 7th assignment) : "But there is evidence of social attention of various kinds, if you believe it. If it is true that this young man did accompany this young lady from church and waited upon her home, and called at the house of her parents, and there waited upon her now and then for two years, that is such social attention within the meaning of our supreme court as would warrant you in finding that fact in the affirmative." The fact to which the learned judge referred was the promise of marriage. He has entirely mistaken our language and meaning. We repeat now what we said then, that the evidence of attentions on the part of the plaintiff to the prosecutrix was not sufficient to submit to the jury upon the question of corroboration. And the jury should be so instructed in the future, if necessary, upon the same, or a similar state of facts.

But one other matter remains. We said before with some reluctance that "We cannot say it was error to refuse to withdraw the question of seduction from the jury. There was some proof that plaintiff in error admitted the promise to marry." The evidence was exceedingly weak, but as the case had to go back for other reasons we thought best to allow this question to be again submitted to the jury. It has not been strengthened upon the second trial. The mother of the prosecutrix sent for the plaintiff in error, after she learned her daughter was in trouble. He came to her house and had an interview with her in the presence of her husband, and her daughter. Mrs. Robertson thus relates what occurred :

Q. What did you say to him (plaintiff) what were the words? A. I told him this was a nice job he had done; I told

him he must fulfill his promise and not bring the rest of the family to shame. Cross-examined. Q. I want you to tell the first thing said, who said it and the answer. A. He bid good evening with me and said he was sorry for what he had done. Q. Told you he was sorry for what he had done : who spoke next ? A. Himself, he said he would marry if I waited two weeks, because he said he owed his sister some money : I told him to fulfill his promise and not bring my family to shame." There is nothing here from which a jury could safely find a' previous promise to marry. This view is strengthened by what followed. Upon her re-direct examination the same witness related what occurred as follows :

Q. Tell us what took place at the time Rice came to your house when you sent for him ? A. He came to talk to me. Q. What was the first thing said? A. We bid good evening together ; and he told me he was sorry for what he had done, and if I should leave it for two weeks, he would marry her ; I told him I would not leave it two days ; I said I had a small family coming up, and did not want to bring them to shame ; he said he hadn't money enough to get married now, he owed his sister board. I said he could get married and have her home there and not to bring my little family to shame. Cross-examined. Q. Then, if I understand it now, it was this way : Rice said he owed some money for board, and could not marry short of two weeks? A. Yes sir. Q. And then you went on and said he could fulfill his promise, that he would have a home there? A. I said, if he would fulfill his promise, and let her come home, as he promised, that her home was there for her, and not bring my family to shame, as I told you before.

As the case now stands, it is our duty to express a decided opinion upon this evidence. The implication which might be gathered from the examination in chief, that the plaintiff referred to a previous promise to marry is entirely removed by the cross-examination which shows that the plaintiff was merely expressing a regret for what he had done, and a willingness to repair the wrong by marrying the girl. And when we examine the subsequent re-examination and re-cross-examination, there cannot be a doubt upon this matter. There is nothing here upon which this verdict can stand. The evidence was at most a scintilla, and it will not do to send a man to the penitentiary upon a scintilla.

It was said however that the case was strengthened by the testimony of Ody Biglin, who stated that he had a conversation with the plaintiff, in which the latter said " he would give $200 to settle it, and wouldn't give no more, that he was guilty of the crime." It would be straining this language to say the plaintiff referred to the promise of marriage. The crime

of which he admitted his guilt was evidently the illicit intercourse. That was not seriously denied; indeed the plaintiff acknowledged it on his former trial.

There was one feature of the trial below that we cannot pass without comment. It was the failure of the Commonwealth to call the father of the prosecutrix in regard to the conversation we have referred to between the mother of the prosecutrix and the plaintiff. The prosecutrix and her father were present at that interview. Neither was called. It matters little about the prosecutrix as her evidence in regard to the promise of marriage could not be aided by placing her upon the stand again. But under the circumstances of this case it was the plain duty of the Commonwealth to have called her father. This was the more necessary by reason of the equivocal character of Mrs. Robertson's testimony, as well as that of her daughter. The Commonwealth demands justice, not victims. This belongs to a class of cases where the whole truth should be brought out if possible. Upon so vital a question as whether, at the interview referred to, the plaintiff admitted a promise of marriage prior to the seduction, the neglect by the Commonwealth to call the father of the girl, who was present at the interview, and heard all that was said, would have justified the jury in drawing an inference seriously unfavorable to the prosecution, and the court below would have been at least justified in saying so.

If the plaintiff in error has been guilty of fornication, of which there seems little doubt, he may be convicted of that offence under this bill.

The judgment is reversed, and it is ordered that the record with this opinion setting forth the causes of the reversal be remanded to the court below for further proceedings.