## Commonwealth *v.* Weber, Appellant.

*Criminal law—Statute of limitations—Misdemeanors—Flight—Return—Concealment within State—Act of March 31, 1860, P. L. 427-450, Sec. 77—"Usual resident"—Words and phrases—Tolling of statute—Seduction—Promise to marry—Evidence—Sufficiency—Charge—Case for jury.*

1. One who is charged with a crime committed in a rural district and flees from arrest to another state but subsequently takes up his residence in a large city within the State and lives under his proper name, may be denied protection of the statute of limitations by disavowing his identity at times for the purpose of evading arrest.

2. The words "usual residence" within the meaning of the Act of March 31, 1860, P. L. 427-450, Section 77, requiring that all indictments for misdemeanors shall be brought within two years, provided "that if the person against whom the indictment shall be brought or exhibited, shall not have been an inhabitant of this State, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution......such indictment shall and may be brought......against such person at any time within a similar space of time during which he shall be an inhabitant of or, usually resident within the State," do not refer only to defendant's place of residence but also to his manner of residence; "usual" when used in this sense means "customary" or "common"; to be a "usual resident" one must conduct himself in accordance with his customary mode of life.

3. One might commit an offense and move to another part of the State in an open manner, or even go from the State, if in military service, and not be barred from claiming the benefit of the statute of limitations, but this is not so where the offender flees from justice and subsequently by fraud and concealment, succeeds in avoiding arrest.

4. Where a person indicted in 1916 for the crime of seduction committed in 1910, pleaded the statute of limitation, it appeared that defendant left the State on learning that a warrant had been issued for his arrest; that no accurate account of his whereabouts thereafter appeared until 1913, when he took up his residence in Pittsburgh where he continued to reside until arrested; that since 1913 he worked at his trade as carpenter in different parts of that city, used his proper name there and received mail from the general delivery and at his various boarding houses, and paid taxes

and voted in the district where he resided; that while a resident of Pittsburgh he frequently visited the rural district in which the crime was committed but on such occasions he denied his identity and used an assumed name, and that when arrested he denied his identity. *Held,* there was sufficient evidence to warrant a finding that defendant was not a "usual resident" of the State and that the statute of limitations should therefore be tolled, and the case was for the jury and a conviction in such case will be sustained.

5. If defendant had moved openly to Pittsburgh immediately after the commission of the crime for the bona fide purpose of taking up his residence there, he would have been a "usual resident" within the meaning of the statute.

6. Circumstantial evidence of an engagement of marriage is to be found in the proof of such facts as usually accompany that relation; among them may be mentioned letters, presents, social attentions of various kinds, visiting together in company, preparations for housekeeping, and the like.

7. In a prosecution for seduction, evidence that defendant had been paying constant attention to prosecutrix for practically one year, that they became engaged to be married about three months after they first met, at which time he gave her a ring; that defendant called on her at least once a week for several months, accompanied her in public, and on one occasion repaired the engagement ring, sufficiently corroborated statement of prosecutrix that defendant promised to marry her.

Argued Oct. 15, 1917.   Appeal, No. 143, Oct. T., 1917, by defendant, from judgment of Superior Court, April T., 1917, No. 151, affirming judgment of Q. S. Allegheny Co., Sept. Sessions, 1916, No. 739, on verdict of guilty of seduction in case of Commonwealth v. Charles Weber. Before Brown, C. J., Mestrezat, Potter, Stewart, Moschzisker, Frazer and Walling, JJ.   Affirmed.

Appeal   from   Superior   Court.   Opinion   by   Williams, J.

The facts appear by the opinion of the Supreme Court and in Com. v. Weber, 67 Pa. Superior Ct. 497.

The Superior Court affirmed the judgment of the Quarter Sessions Court.   Defendant appealed,

*Error assigned,* among others, was the judgment of the Superior Court.

*George H. Quaill,* for appellant.—The evidence was not sufficient to sustain a conviction of seduction: Rice v. Commonwealth, 102 Pa. 408.

Defendant was an "inhabitant" and "usual resident" within the meaning of the Act of 1860: Graham v. The Commonwealth, 51 Pa. 255; Blackman v. Commonwealth, 51 Pa. 255; Blackman v. Commonwealth, 124 Pa. 578.

*R. H. Jackson,* District Attorney, with him *E. R. Jackson,* Assistant District Attorney, *J. D. Hern* and *Denis Æ. Behen,* for appellee.—The evidence amply corroborated the promise of marriage: Rice v. Commonwealth, 100 Pa. 28.

Defendant was not a "usual resident" of the State: Commonwealth v. Blackburn, 3 Pa. C. C. 464; Blackman v. Commonwealth, 124 Pa. 578; Commonwealth v. Wilson, 18 Pa. Dist. Reports 38; Commonwealth v. Smith, 19 Pa. C. C. 397; Commonwealth v. Bates, 1 Pa. Superior Ct. 223.

OPINION BY MR. JUSTICE FRAZER, January 7, 1918:

Defendant appeals from a judgment of the Superior Court (67 Pa. Superior Ct. 497) affirming the judgment of the Court of Quarter Sessions of Allegheny County in which defendant was indicted and convicted for seduction and fornication and bastardy. The principal question for determination is whether or not defendant was an inhabitant or usual resident of this Commonwealth for a period of two years previous to his indictment within the meaning of Section 77 of the Act of March 31, 1860, P. L. 427-450, requiring all indictments for misdemeanors to be brought within two years, provided "that if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabit-

ant of this State, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall and may be brought or exhibited against such person at any time within a similar space of time during which he shall be an inhabitant of or, usually resident within this State."

The offense was alleged to have been committed in West Deer Township, Allegheny County, in July, 1910, at which time defendant was a resident of that township. An information was sworn to April 7, 1911, and a warrant issued, but owing to defendant's absence was not executed.   An alias warrant issued in April, 1912, likewise could not be served, and on July 6, 1916, defendant was arrested on a pluries warrant issued in February, 1913, and indicted September 22, 1916.   As to the main facts there is no controversy.   Defendant left home on learning a warrant had been issued for his arrest, going to Youngstown, Ohio, and no accurate account of his whereabouts thereafter appears until November, 1913, when he took up his residence in Pittsburgh and continued to reside in that city until arrested.   For a time he had quarters at a small hotel, subsequently removing to a boarding house, and has continuously since 1913 lived in boarding houses in various parts of the city, and according to his testimony has been outside the County of Allegheny but twice in three years.   During that period he worked at his trade as a carpenter, being employed in that capacity for a time in a department store in Pittsburgh, and at other times in different parts of the city.   While so employed he appeared in public, lived under his proper name, received mail through the general delivery at the post office and at his various boarding houses, paid taxes and voted in the district where he resided.   It is in fact conceded he was an inhabitant of the State for a period sufficient to bring him within the protection of the statute of limitations.   The question is, was he also a "usual resident" of the State

within the meaning of that expression as used in the act, or was the statute tolled by reason of various acts of concealment committed by defendant during the two-year period preceding his indictment.

While a resident in Pittsburgh, defendant "off and on" usually "over Sunday" visited his old home in West Deer Township, where he owned an interest in a farm. On these occasions attempts were made to arrest him, but upon inquiry his relatives stated they were unable to give information as to where he could be found. On several occasions he hired a horse and buggy at a livery stable in a borough adjacent to the City of Pittsburgh, to drive to West Deer Township and attempted to conceal his identity by using an assumed name, and denying he was Charles Weber upon being recognized by the livery stable keeper. He also denied his identity when arrested. The trial judge charged that if defendant lived in Pittsburgh under his proper name without attempting to disguise or conceal his identity he must be acquitted; if, however, he endeavored to conceal his identity he was not a usual resident of the State within the meaning of the statute.

It thus appears the exact question raised is whether one charged with crime committed in a rural district who flees from arrest, but subsequently takes up his residence in a large city within the State, where he lives under his proper name, can be denied the protection of the statute by disavowing his identity at times for the purpose of avoiding arrest.

In Graham v. Commonwealth, 51 Pa. 255, it was stated the proviso to the section of the act in question was meant for persons escaping and absenting themselves to avoid punishment until the lapse of time might enable them to return with impunity. In Blackman v. Commonwealth, 124 Pa. 578, the trial judge charged that if the jury found defendant left the county for the purpose of avoiding arrest and remained away under circumstances which baffled all efforts made to find him, he might be convicted regardless of whether his place of

concealment was within or without the State.    In that case no evidence having been offered on behalf of defendant it was held the Commonwealth made out a prima facie case by proving defendant had fled from his usual place of residence within the State for the purpose of avoiding arrest and could not be found within the State, hence proof that defendant concealed himself outside the State was unnecessary.    The court said (page 583) : "If the defendant was hiding within the State instead of outside of it, it was a fact peculiarly within his own knowledge, and he was a competent witness to prove it.    Had he done so, he would have been in a position to raise the question, whether a fugitive from justice who effectually secretes himself within the State, and thus baffles all attempts to arrest him until the statute has run, can then emerge from his hiding place and successfully plead the statute of limitations.    We will decide such question when it is fairly raised.    The language of the learned judge below upon this point, whether accurate or not, did the defendant no harm."

The question here involved was disposed of by the Superior Court in the following language: "The words 'usual resident' do not refer to defendant's place of residence, but to his manner of residence.    'Usual,' when used in this sense, means 'customary' or 'common': Graham v. Com., supra, at page 258.    To be an 'usual resident,' therefore, one must conduct himself in accordance with his customary mode of life.    One might commit an offense and move to another part of the State in an open manner, or even go from the State, if in military service, and not be barred from claiming the benefit of the statute: Graham v. Com., supra; but this is not so where the offender flees from justice and, subsequently, by fraud and concealment, succeeds in avoiding arrest. Unless we so construe the act the words 'usual resident' become meaningless.    If the offender lives outside of the State he is a nonresident, and if he remains in hiding or concealment within the State he is an 'inhabitant,' but

not an 'usual resident.' The question is primarily one of fact, and was properly submitted to the jury."

While it must be conceded the acts of concealment in this case were not numerous, they were committed at times and places when danger of apprehension was greatest, which were when defendant visited his former residence in West Deer Township. Had he removed openly to Pittsburgh for the bona fide purpose of taking up his residence there a different situation would be presented. His original departure from the State was not to take up a bona fide residence elsewhere but for the purpose of avoiding arrest. Such acts are not consistent with those of a "usual resident" of the State, and one who thus actively takes steps to avoid arrest has no just cause for complaint when the jury is permitted to infer from such circumstances that he was not a "usual resident" within the meaning of the statute of limitations.

The remaining question is the sufficiency of the evidence to corroborate the prosecutrix's testimony concerning the promise of marriage, as required by Section 41 of the Act of March 31, 1860, P. L. 427-440. Defendant had been paying constant attention to prosecutrix for practically one year and they became engaged to be married about three months after they first met, at which time he gave her a ring. The principal evidence relied upon to corroborate her testimony as to the promise of marriage was the fact that she wore the ring given her by defendant, that defendant called on her at least once a week for several months, took her to church and other places, and on one occasion repaired the engagement ring. Defendant contends this was not sufficient evidence of corroboration to submit to the jury, and relies upon the case of Rice v. Commonwealth, 100 Pa. 28, and the same case reported on retrial in 102 Pa. 408. There it appears from the opinion of this court in 100 Pa. 28, page 32, that "The attentions from which the jury were permitted to infer a promise of marriage were of an equivocal character. The plaintiff in error had been in

the house of the prosecutrix but four times, according to her own statement and that of her mother, and then only for a short time. He met her out in the evenings, sometimes at church, walked home with her, and left her at the gate. This is not the kind of intercourse that usually takes place between persons engaged to be married. It may tend to matrimony, but is quite as likely to lead to something else. Circumstantial evidence of an engagement of marriage is to be found in the proof of such facts as usually accompany that relation. Among them may be mentioned letters, presents, social attentions of various kinds, visiting together in company, preparations for housekeeping, and the like. These and similar circumstances, especially when the attentions are exclusive and continue a long time, may well justify a jury in finding a promise of marriage."

On the second trial of the case evidence submitted by the Commonwealth was practically the same as on the former trial and it was held, reversing the judgment of the court below, that the evidence was not sufficient to submit to the jury on the question of corroboration. In the present case the proof was more substantial than was that in Rice v. Commonwealth, and sufficiently corroborated prosecutrix, within the rule therein stated, to warrant its submission to the jury.

The judgment is affirmed.