# Maginnis's Case.

*Attorneys-at-law—Disbarment—Procedure—Charges — Notice— Investigation—Assistant district attorney—Irregularities in office —Cases before grand jury—Public official—Presumption of proper motives—Examination—Incriminating questions—Costs.*

1. An assistant district attorney in charge of a grand jury may add the name of a witness on an indictment, and summon him before that body. The mere fact that he did not make sure the witness would give testimony harmful to defendant, does not justify a conclusion that he acted with an improper motive; and this is especially the case where there is nothing in the evidence to show that the officer acted from any evil or corrupt purpose.

2. An assistant district attorney will not be disbarred because he took into the grand jury sworn notes of testimony in another case, to check up the testimony to be taken, where it appears that he believed defendant to be innocent, and possibly desired the bill to be ignored, but there is nothing to show that he was moved by a corrupt purpose.

3. In disbarment proceedings, where there are several charges against the attorney, in the office of assistant district attorney, and the accused files an answer in which he avers that he did not misbehave himself, such an answer does not throw open to investigation everything that he may have done during the occupation of his office.

4. Lawyers cannot be disbarred for breach of good taste, and while they may be disciplined for ethical mistakes, absolute disbarment in such cases can seldom be justified, and this is particularly so where the matter in question is not contained in the written charges assigned as reasons for disbarment.

5. A court may, of its own motion, institute proceedings for disbarment.

6. The court may, in such proceedings, call and examine an attorney, subject to his right of declining to answer any question which may incriminate him.

7. In disbarment proceedings against an assistant district attorney, the accused is entitled to the benefit of the rule that a public official, in the conduct of his office, is presumed to have been actuated, in every instance, by proper motives, until the contrary is shown.

8. Duty of district attorney in proceedings before grand jury defined and explained.

9. Where an order disbarring an attorney is reversed on appeal, the costs will be imposed upon the county.

Argued January 4, 1921. Appeal, No. 108, Jan. T., 1921, by E. J. Maginnis, Third Assistant District Attorney, from order of Q. S. Schuylkill Co., March T., 1920, Misc. Docket 35, making absolute rule to disbar In re Rule against E. J. Maginnis. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Rule to show cause why E. J. Maginnis should not be disbarred. Before BECHTEL, P. J., BERGER and KOCH, JJ. See 16 Schuylkill L. R. 396.

The opinion of the Supreme Court states the facts.

The court made the rule absolute.    Respondent appealed.

*Error assigned,* among others, was order, quoting it.

*James Gay Gordon,* with him *Owen McLane, B. J. Duffy, R. G. Graeff* and *Jas. B. Reilly,* for appellant.— The order was erroneous: Ex parte Steinman, 95 Pa. 220; Com. v. Nicely, 130 Pa. 261.

Proof of act not charged will not justify disbarment: 6 Corpus Juris, p. 605, section 69.

*Arthur L. Shay,* with him *J. H. Garrahan* and *James A. Noecker,* for appellee, cited: In re Shoemaker, 2 Pa. Superior Ct. 27; Com. v. Bell, 145 Pa. 374; Com. v. Bradney, 126 Pa. 199; Com. v. Hegedus, 44 Pa. Superior Ct. 161; In re Graffius, 241 Pa. 222.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 14, 1921:

This appeal is from an order of the Court of Quarter Session of Schuylkill County, disbarring appellant, E. J. Maginnis, and directing the clerk of that tribunal to transmit a copy of the record to the court of common pleas and the orphans' court of the district, presumably for the purpose of further disbarments.

No formal allegations of professional misconduct were entered against respondent by any complainant; but— as appears from a declaration to that effect by one of the judges of the court below, contained in the notes of testimony—certain assertions made by Mr. Maginnis, in the judge's chambers, concerning his, respondent's, conception of duty, as an assistant district attorney (which position he then held), to protect the innocent as well as to prosecute the guilty, caused the proceedings now before us for review to be instituted by the court itself.

For the purpose of charging respondent, in some formal manner, with several matters of alleged misconduct, a paper, referred to in the proceedings as a "prefatory statement," was filed by the court, in support of the rule for disbarment; wherein, after reciting that "certain facts concerning the professional conduct of E. J. Maginnis as deputy district attorney" had come to the "judicial knowledge" of the court, the following specific charges are made: (1) In a case against one Leinenbach, prior to the trial of that defendant, respondent told the former's mother-in-law "the character of the evidence adduced before the grand jury, on which the bill of indictment had been found." (2) In another case, against two men, named Kendrick and Stepsky, charged with aggravated assault and battery, respondent caused a certain Dr. Buckley—"who had not been returned by the committing magistrate as a witness for the Commonwealth, and whose name had not been entered as a witness on the bill of indictment"—to be summoned before the grand jury; and this witness gave testimony "that the slight wounds which the prosecutor alleged he had sustained......were, in his opinion, not made by a knife"; the bill of indictment was ignored. (3) In another case, against two men named Joseph Yusniskis and Lewis Costinski—convicted of assault and battery and aggravated assault and battery, respectively—after their convictions, one Enoch Costinski, a brother of Lewis, confessed that he, and not the latter, had inflicted the wound upon the prosecutor. E. J. Maginnis prepared the confession, and presented it to the judge who presided at the trial, in support of a motion for "a new trial for the convicted men"; following this, the deposition of Enoch Costinski was taken, to sustain his confession; whereupon deponent was prosecuted for perjury, against the official disapproval of respondent. The court then goes on to charge that "without the knowledge of the trial judge, R. H. KOCH, the said E. J. Maginnis had obtained a copy of the notes of testimony,

taken by such judge at the trial of said Joseph Yusniskis and Lewis Costinski, and had used the said notes of testimony before the grand jury for the purpose of having the bill of indictment, charging the said Enoch Costinski with perjury, ignored; and the bill of indictment, was ignored." The final count charges (4) that E. J. Maginnis, in explanation of his conduct set forth in the last count, "justified his acts by stating that, in the matters alleged......, he had acted in defense of the innocent; that he had done so in other cases of which he had had official charge before the grand jury; that he proposed to continue in such course of action in the future; and that he regarded it as his right and duty as an official 'to stand for innocence before the grand jury.'"

The first of the four allegations of misconduct was denied in respondent's answer, and no evidence was produced to support the charge; on the contrary, the person to whom the information in question was alleged to have been given confirmed respondent's denial. Since the adjudication filed by the court below does not refer to this particular count, we must assume that it is treated as not sustained.

In reply to the second count, the answer denies that Dr. Buckley was summoned before the grand jury "solely at the direction and upon the authority of respondent," and avers that the doctor was called "in compliance with the request of members of the grand jury"; that the witness's name was endorsed on the indictment, and private counsel for the Commonwealth was so informed, before the doctor testified; that respondent had no knowledge as to the nature or character of the testimony Dr. Buckley would give, before he appeared in the grand jury room; that the doctor's testimony was not as set forth in the charge; that "respondent took no part in the deliberations of the grand jury upon the bill in question, nor did he attempt to influence that body in any manner as to its finding."

The court reports that Dr. Buckley's name was not returned by the justice of the peace; but, "at the request of some grand juror, made to Maginnis during the presentation of the case, Dr. Buckley was subpœnaed"; that, although the doctor called at the private office of respondent "the evening before he appeared as a witness ......, Maginnis made no inquiry of him as to what his testimony would be"; that respondent, having been informed the prosecutor had attempted to corrupt Dr. Buckley, nevertheless summoned him, without advising the court, the district attorney or private counsel for the prosecutor of his intention so to do; finally, that, when the witness appeared before the grand jury, he "gave several probable causes for the wounds, including a sharp instrument, a fall, a blow from a stick or piece of timber and a blunt instrument." On these facts the court concluded that Mr. Maginnis had "called Dr. T. V. Buckley as a witness for the Commonwealth for the purpose of having the bill ignored."

While the court below states that Dr. Buckley "called at the private office of Maginnis" prior to appearing as a witness, the testimony shows that "he merely dropped into" respondent's office for the purpose of asking whether it was necessary for him to attend the grand jury, to which the respondent answered "yes"; and it further shows that the latter had no knowledge whatever of the testimony the doctor was likely to give. We must take this explanation of respondent to be true, for it was in no way shaken by the testimony given when Dr. Buckley himself and other witnesses with knowledge of the facts were called.

Respondent further explained that, although he heard the prosecutor had "offered Dr. Buckley a large sum of money to come and testify in his favor," yet, since the doctor had not appeared, he thought him a trustworthy witness. He said the prosecutor made "very damaging admissions" before the grand jury, and this caused the summons to go out for Dr. Buckley, who possessed some

knowledge of the wounds inflicted at the time of the alleged assault. While the evidence on the point is not clear, we can still take but one meaning from it, and that is that the prosecutor's testimony before the grand jury did not properly back up his charge, which occasioned the suggestion, from someone in the grand jury room, that Dr. Buckley be sent for.

Mr. Maginnis testified he notified private counsel for the prosecution that Dr. Buckley was to be called before the grand jury, and it appears from the doctor's own testimony that he also communicated this fact to the same person; but there is nothing to show that respondent stated, either to the court or district attorney, an intention to call the doctor. We do not know what the custom in such matters is in Schuylkill County, but, from experience as an assistant district attorney in Philadelphia, the writer of this opinion has knowledge that, in the latter jurisdiction, the Commonwealth's officer in charge of the grand jury would never hesitate to add the name of a witness on an indictment, and summon him before that body, when the person had relevant information to impart; this is particularly true in an aggravated assault and battery case where, as here, the suggestion so to do comes from a grand juror. In such an instance, the fact that the assistant district attorney did not make sure the witness would give testimony harmful to the defendant, in no sense justifies the conclusion that the officer in question had acted with an improper motive in the premises; although due care would seem to dictate that he should inform himself before permitting the witness to testify, and, if in doubt as to his duty, submit the matter to the court for instructions.

A study of all the evidence produced, fails to disclose anything on the record to warrant a finding that respondent summoned Dr. Buckley "for the purpose of having the bill ignored"; but, be this as it may, there is absolutely nothing to show any evil or corrupt purpose on the part of respondent in connection with the trans-

action under investigation, and, in fact, the court below does not find any such "evil or corrupt purpose."

The matters covered by the third and fourth charges are, as previously stated, those which gave rise to the present proceeding. It appears that cross-bills were brought before the grand jury, in which the prosecutors of the two defendants named in the third charge were accused by the latter of offenses against them. There had been a wave of crime in the community where these offenses were alleged to have been committed, and respondent, who lived there, entered upon a minute investigation, in which he became satisfied that the convicted defendants were not guilty.

When Enoch Costinski confessed, this reënforced respondent's thought that innocent men had been convicted; and subsequently it occurred to him, as well as to others engaged in the investigation, that it might be well to have the trial notes—taken by Judge Koch—in hand when the prosecutors appeared before the grand jury to press their charge of perjury against Enoch Costinski. We have examined these notes, which appear on the record, and find them nothing more or less than the same kind of notes, only in briefer form, that would have been made by a court stenographer, had one been present at the original trial; they were loaned by Judge Koch to a Mr. Wilhelm, another member of the Schuylkill County bar, and respondent obtained them from him.

When we take into consideration the explanation of Mr. Maginnis (which was not in any way attacked), that he was endeavoring by all means within his control to get at the real truth of the various charges under investigation between the parties to the cross-bills, and this because of the prevalence of crime in the locality in question, we cannot see what there is on the record to justify the accusation that, in obtaining the notes from Mr. Wilhelm, or in using them to check up the evidence given by the prosecutors, before the grand jury, in the per-

jury charge against Enoch Costinski, the respondent acted with any evil or corrupt design; and, in fact, the court below does not find that he did act with any such design, its conclusion in this connection being simply that respondent's purpose in using the notes was to "have said bill ignored"; and it may be observed that Judge Koch, in a dissenting opinion, states his conclusion that Mr. Maginnis made "use of the notes...... under the mistaken belief that he was doing right in adopting such a method for the protection of one whom he thought innocent."

It is quite possible that respondent did desire the bill in question to be ignored, for he then believed, and still asserts his belief, that Costinski was not guilty of perjury in the matters charged against him; his idea being that the man should have been prosecuted, according to his own confession, for assault and battery, and not for perjury. Since respondent entertained this belief, it would have been in much better taste for him not to have appeared before the grand jury at all, when the perjury charge was being investigated; but a most careful reading of the testimony fails to show that he was moved by a corrupt purpose in the premises, and, as before noted, the court fails to make any such finding against him.

The court below ruled that, because the answer of respondent contains a general averment stating he did not misbehave himself in his office as assistant district attorney, this threw open to investigation everything which Mr. Maginnis had done or said at any time during his occupation of such office, ranging over a period of nearly eight years. When made, this ruling was strenuously objected to by counsel for respondent, and each time an investigation of matters not contained in the original charges was entered upon, counsel objected to the evidence; but these objections were invariably overruled, exceptions being allowed.

One of the matters thus examined into, against the objection of respondent, was the adding of certain names, as witnesses, on a return made by a magistrate (not to a bill of indictment). Mr. Maginnis denied that he had added the names or knew anything about the matter. After many witnesses were called, another assistant district attorney admitted he had put the names on the return; whereupon the court, expressing the opinion that the assistant in question had no doubt acted in entire good faith, and, stating that such practice should not be pursued in the future, dropped the matter.

Another subject investigated, against the protests of respondent, because no charge had been filed covering it, was an allegation that Mr. Maginnis, after a return by a justice of the peace against a defendant, of simple assault and battery, had drawn a bill charging such defendant with felonious assault and battery. The court found respondent had pursued this course for the "purpose of saving the prosecutors from liability for costs."

It is established law that, when a prosecuting officer is satisfied from his investigations that a higher grade of offense, cognate to the one returned by the committing magistrate, is properly chargeable against a defendant, he may draw the bill accordingly (Nicholson v. Com., 96 Pa. 503); although in some counties permission so to do is first asked of the court. Here the original charge against the defendant in question coincides with the bill as written; and this, together with the results of respondent's investigations, is the reason given by him for drawing the bill as he did.

Albeit respondent may have interlined the world "feloniously" in the indictment under consideration, we fail to find any evidence on the record to warrant the conclusion of the court below that he wrote the bill in that way with a design to save the prosecutors from costs; but, more than this, we think neither this charge, nor the others not covered by the statement filed in support of the rule to disbar, should have been investigated for

the purpose of making findings against respondent—as
the basis of his disbarment—without formally reducing
the charges to writing, in order to give him due and
proper notice thereof. As well said by the court below,
in its opinion, "the rule to disbar......did not require
him [the respondent] to answer"; and we feel the gen-
eral allegation of good behavior, contained in the an-
swer voluntarily filed, did not dispense with the neces-
sity for observing the ordinary formalities, which make
for proper procedure.

What we have just stated sufficiently covers another
matter, elaborately investigated, despite the objection
of respondent that it was not contained in the charges
against him, in which the court below found that Mr.
Maginnis, "though an assistant district attorney of
Schuylkill County at the time, represented a defendant
[in a criminal case pending in Philadelphia County] as
assistant counsel"; but it may be well to add in this con-
nection that we have read all of the testimony relating
to the charge in question and find nothing to contradict
the evidence, given by Mr. Maginnis himself, to the effect
that, while he sat back of the attorneys for the defendant
in the Philadelphia court, when the case referred to was
being tried, he did not act as assistant counsel, in the
sense of participating as a lawyer in the trial. Be this
as it may, a proper appreciation of the ethics of his
position should have dictated to respondent the impro-
priety of appearing at that particular trial in any ca-
pacity, or of associating himself in any degree with a
person under criminal charges; but lawyers cannot be
disbarred for breaches of good taste, and, while they
may be disciplined for ethical mistakes, absolute dis-
barment in such cases can seldom be justified, particu-
larly where, as here, the matter in question is not con-
tained in the written charges assigned as reasons for
disbarment.

We entertain no doubt concerning the power of the
court below to proceed of its own motion, as it did in this

case, nor of its authority to call and examine respondent, subject to his right of declining to answer any question which might incriminate him (a right of which, fortunately, the present respondent was not obliged to avail himself), and it is undoubtedly not only within the power but it is the duty of a court to disbar a lawyer when guilty of corrupt conduct towards his clients or in an official position; for by such corruption he forfeits the certificate of judicial confidence which his admission to the bar holds forth to the public. At the same time, the powers in question must be exercised with the utmost care; and, in a case like the present, where all the charges go to the conduct of the respondent as a public official (the proceedings being in effect tantamount to impeachment), the accused is entitled to the benefit of the rule that a public official, in the conduct of his office, is presumed to have been actuated, in every instance, by proper motives, until the contrary is shown. Here, it seems to us, the present respondent was denied the benefit of this rule, and, whenever accused of misconduct, every possible inference was drawn against him; but, even then, the court in no instance has pronounced him guilty of corruption.

On the record before us, the most that can be said of the official conduct of respondent is that, as already indicated, in several cases he failed to show a proper appreciation of official and professional proprieties, in others he demonstrated bad judgment, and possibly in others he showed a lack of knowledge of the limitations on his powers as assistant district attorney.

As respondent was instructed by one of his judges at the hearing of the rule, it is not for him to try defendants before the grand jury. His duty is simply to see that the evidence of the prosecution is sufficiently produced before that body, and to give the jurors such general instructions on the law as they may require of him; where, after drawing all inferences in favor of the Commonwealth, the evidence fails, in his opinion, to show a prima

facie case against an accused, but a true bill is found, he may ask leave to enter a nol. pros. He should not be present at the deliberations of the grand jury, nor express any opinion on the evidence to the jurors: Com. v. Bradney, 126 Pa. 199, 205.

The respondent testified that he endeavored to follow these rules; but, however this may be, it is apparent that, up to the time of the trial of the charges against him, he suffered from an over-solicitous sense of duty toward those whom he believed innocent, and had too high an estimate of his rightful powers to protect them before the grand jury.

While it is the duty of a prosecuting officer to seek justice only, and to see that no innocent person suffers, when a charge is before the grand jury, he, like the members of that body, must resolve all doubts in favor of the Commonwealth; whereas, when the case comes up for trial before a petit jury, all doubts must be resolved in favor of the accused. For an excellent statement of this rule, see the opinion of the late Judge MICHAEL ARNOLD in Com. v. McCarthy, 11 Pa. Dist. R. 161, 162.

As previously said, the evidence at bar indicates that respondent was somewhat confused in his ideas concerning the proper application of the rules to which we have referred, and also in his appreciation of the proprieties, but it fails to show him to have been corrupt in office or controlled by evil purposes, nor are there any unequivocal findings to that effect; in the absence of such proofs and findings, we are of one mind that, on the present record, the extreme penalty of disbarment should not have been visited against him. It may be that respondent needed disciplining, but a short suspension from practice would have accomplished that; and this he has in effect already undergone.

If, after the instruction, on the law and rules of conduct, received by the respondent in these proceedings—which, we entertained no doubt, the court below felt itself obliged to initiate—he again fails to show a proper

appreciation of professional proprieties, his future conduct may be viewed in a different light; but, as the case now stands, we feel confident that Mr. Maginnis will profit by the punishment which he has been obliged to suffer.

The record before us, for the reasons given, does not warrant the extreme penalty of disbarment. It is not necessary to pass specifically upon each of the assignments of error; we sustain the first thereof, which complains of the final decree.

We shall make an order as to costs similar to that entered in Sherwood's Case, 259 Pa. 254, 262.

The decree is reversed, the costs below and on this appeal to be paid by the County of Schuylkill.