## Commonwealth, Appellant, *v.* Dunnick.

Argued June 8, 1964. Before ERVIN, WRIGHT, WOOD-
SIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES,
P. J., absent).

*J. Edward Pawlick,* for Commonwealth, appellant.

*Richard H. Horn,* with him *William F. Hoffmeyer,* for appellee.

OPINION BY WOODSIDE, J., July 24, 1964:

This is an appeal from an order of the Court of Quarter Sessions of York County quashing an indictment.

An information was filed August 7, 1959, before an alderman charging the defendant with fornication and bastardy on December 19 and 20, 1958, in violation of §506 of The Penal Code of June 24, 1939, P. L. 872, 18 P.S. §4506. A warrant was issued the same day, but the constable could not find the defendant. He was not arrested until September 17, 1962. The child had been born on schedule September 19, 1959. The event was noted on the alderman's transcript.

The defendant moved to quash the information on the ground it was barred by the statute of limitations. The court refused to quash the information saying in its opinion: "We are satisfied that any prosecution or indictment for fornication and bastardy has been barred by the statute of limitations . . . However, the Commonwealth suggests . . . that the information may be sufficient to support an indictment for failure to support a child born out of lawful wedlock. Such a charge would not be barred by the statute of limitations because The Penal Code permits prosecutions to be brought within two years from the birth of the child. Act of June 24, 1939, P. L. 872, §732, 18 P.S. §4732. This has been construed to mean a period of two years

from the birth to the date the information is filed, and not to the date of indictment. Commonwealth v. O'Gorman, 146 Pa. Superior Ct. 553 (1941); Commonwealth v. Teeter, 163 Pa. Superior Ct. 211 (1948); Commonwealth v. Shimpeno, 160 Pa. Superior Ct. 104 (1946)." *Commonwealth v. Dunnick,* 77 York 83, 85 (1963).

The defendant was thereupon indicted on the latter charge. Upon motion of the defendant, the court, after argument, quashed the indictment on the ground that the information charging fornication and bastardy brought under §506, supra, cannot support an indictment charging failure to support a child born out of lawful wedlock brought under §732, supra.

The court below decided "that the indictment is fatally defective because it charges an offense different from that alleged in the information." The crime charged in an indictment need not be the identical crime charged in the information. The indictment is valid if it charges the commission of any crimes which are cognate to the one laid in the information. *Commonwealth v. Ruff,* 92 Pa. Superior Ct. 530, 536 (1928); *Maginnis's Case,* 269 Pa. 186, 195, 112 A. 555 (1921); *Commonwealth ex rel. Tanner v. Ashe,* 365 Pa. 419, 76 A. 2d 210 (1950); *Commonwealth v. Danner,* 79 Pa. Superior Ct. 556, 558 (1922).

The offense of fornication and bastardy and the offense of failure to support a child born out of lawful wedlock are separate offenses. *Commonwealth v. Morningstar,* 82 Pa. Superior Ct. 425, 427 (1923); *Commonwealth v. Bertram,* 143 Pa. Superior Ct. 1, 3, 16 A. 2d 758 (1940); *Commonwealth v. Foust,* 194 Pa. Superior Ct. 253, 166 A. 2d 109 (1960). A conviction of fornication and bastardy is not a bar to a prosecution for failure to support the child. *Commonwealth v. Susanek,* 88 Pa. Superior Ct. 428, 431 (1926); *Commonwealth v. Pewatts,* 200 Pa. Superior Ct. 22, 25, 186 A. 2d 408 (1962).

The gist or gravamen of an action of bastardy is the fornication as a result of which the female conceives. The gist or gravamen of an action of failure to support a child born out of lawful wedlock is the failure to support a child. In a fornication and bastardy case the court has jurisdiction only if either the fornication or the birth of the child occurs within the county, but a defendant may be convicted for failure to support a child conceived and born out of the Commonwealth. Paternity of the child is an issue which must be proven by the Commonwealth in both cases, but in bastardy it is *the* issue while in failure to support a child born out of lawful wedlock *the* issue is the failure to support, which occurs not at the approximate time nor as a result of the fornication but at a time after the child is born, and as a result of the defendant's conduct thereafter. The difference of these crimes is further emphasized by the fact that bastardy carries no punishment except an order to support the child and is, in effect if not in law, more civil than criminal, while the crime of failure to support carries with it a penalty of fine and imprisonment.

These two offenses are not cognate offenses. The information does not support the indictment which was properly quashed by the court below.

We disagree, however, with that court's statement in its first opinion that an indictment for fornication and bastardy has been barred by the statute of limitations.

The statute of limitations is found in §77 of The Penal Code of March 31, 1860, P. L. 427, 19 P.S. §211, the relevant part of which is as follows: "All indictments . . . for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such . . . misdemeanor shall have been committed: Provided, however, That if the person against whom such indictment shall be brought or exhibited shall not

have been an inhabitant of this state, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period, within a similar space of time, during which he shall be an inhabitant of, or usually resident within this state: . . ."

In a charge of fornication and bastardy the statute starts to run on the date of the alleged fornication and not on the date when the child was born. See the part of the lower court opinion quoted above. Although no indictment was brought within two years of the alleged fornication, the question remains whether the defendant was an inhabitant or "usual resident" of this state during the period for which he was subject to prosecution. The Commonwealth admits that the defendant was an inhabitant of the state but questions that he was a usual resident therein.

The meaning of "usual resident" as used in the statute of limitations is set forth by the Supreme Court, adopting the language of the Superior Court, in *Commonwealth v. Weber*, 259 Pa. 592, 597, 103 A. 348 (1918) as follows: "The words 'usual resident' do not refer to defendant's place of residence, but to his manner of residence. 'Usual,' when used in this sense, means 'customary' or 'common' . . . To be an 'usual resident,' therefore, one must conduct himself in accordance with his customary mode of life. One might commit an offense and move to another part of the State in an open manner, or even go from the State, if in military service, and not be barred from claiming the benefit of the statute . . . but this is not so where the offender flees from justice and, subsequently, by fraud and concealment, succeeds in avoiding arrest. . . . If the offender lives outside of the State he is a non-resident, and if he remains in hiding or concealment within the State he is an 'inhabitant,' but not an

'usual resident.' The question is primarily one of fact, and was properly submitted to the jury."

Depositions were taken on the petition to quash. The court below concluded that the Commonwealth failed to show in these depositions that the defendant ceased to be a usual resident of Pennsylvania. We think this question is for the jury. From the depositions before the court there appears to us to be sufficient evidence for a jury to find that the defendant was not a usual resident within the Commonwealth during the term for which he was liable to prosecution. See §77 of The Penal Code, supra.

The prosecutrix conceived on December 19 or 20, 1958, knew she was pregnant in February of 1959 and talked to the defendant about it several times shortly thereafter. In June of 1959, she and her mother met with the defendant when he told them that he would let them know in a week or two what he intended to do. He never contacted the prosecutrix nor her mother thereafter, and their efforts to contact him failed. On August 7, the prosecutrix made the information charging him with fornication and bastardy. The defendant claims that his residence was with his parents in New Freedom, York County. The constable could not find the defendant there. His parents said he was on the west coast. In September the defendant's sister, whose husband is the defendant's lawyer, went to the home of the prosecutrix and "wanted to settle. . . . She said she didn't know where [the defendant] was at but she thought he was on the west coast, that the parents or her didn't know why he left." When the baby was born the prosecutrix's mother called the defendant's mother and told her. Again the defendant's mother said she did not know his whereabouts. Further efforts to serve the warrant failed until September 1962, when he was arrested.

In the defendant's depositions, he admitted that he had been with the prosecutrix, that he knew she was pregnant, that he was accused of being the father of the child, that he was at a conference with the prosecutrix and the defendant in June 1959, but he was "not sure" whether he told them he would get in touch with them later. He claimed residence in Pennsylvania with his parents who, he says, knew where he was when he was not living in their house. He admitted that he knew a constable was looking for him with a warrant. He was not on the west coast during this time. He testified that during the summer of 1959 he worked at a Y.M.C.A. camp in Maryland and later waited on tables in the Poconos. In the fall he went to California State College in California, Pa. and continued there as a student during the remaining time in question. In the summers of 1960, 1961 and 1962 he was employed in Wildwood, New Jersey. He says he spent most of his Christmas and Easter vacations at his home in New Freedom, and that he made no effort to hide his presence there.

One who actively takes steps to avoid arrest and succeeds by concealing his whereabouts has no just cause for complaint when the jury is permitted to infer that he was not a "usual resident" within the meaning of the statute of limitations. *Commonwealth v. Weber,* supra, 259 Pa. 592, 598, 103 A. 348 (1918).

The District Attorney had prepared two indictments for presentation to the Grand Jury, one charging fornication and bastardy and the other charging failure to support a child born out of lawful wedlock. The court below in its first opinion suggested to the District Attorney so pointedly that it was in effect a direction to indict the defendant for failure to support the child. If the defendant was not a "usual resident" between the time the warrant was issued and when he was arrested, then the statute of limitations did not run dur-

ing that time, and an indictment for fornication and bastardy was not barred.

The indictment charging failure to support a child born out of lawful wedlock must be quashed, but the information charging fornication and bastardy and the arrest thereunder are not thereby nullified. If within two years of the arrest, an indictment for fornication and bastardy is found, it becomes a jury question to be submitted under proper instruction at the time of trial whether the defendant was a "usual resident," within the Commonwealth during the time he was liable to prosecution.

If the jury finds as a fact, that he was a usual resident within the Commonwealth he is entitled to be discharged. If it finds that he was not a usual resident while the statute was running, then it must pass upon the merits of the fornication and bastardy charge. If the defendant is indicted for fornication and bastardy, this opinion does not prevent the defendant raising any defenses which would otherwise be available to him before, during and after trial.

Order quashing indictment affirmed. Defendant to remain under bail for such action as may hereafter be legally taken.