## Riddle Appeal.

Submitted December 11, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Leonard Turner,* for appellant.

*Nicholas J. Lisi,* and *Solo, Bergman & Padova,* for appellee.

OPINION BY JACOBS, J., April 3, 1974:

This case presents the question whether the double jeopardy clause of both the United States and Pennsylvania Constitutions[1] bars the retrial of one accused of neglect to support a bastard and fornication and bastardy under § 732 and § 506, respectively, of The Penal Code, Act of June 24, 1939, P. L. 872,[2] when the initial trial was concluded by the court's *sua sponte* declaration of a mistrial. The lower court concluded that double jeopardy barred further proceedings against the defendant on these charges. Although we agree that one who is criminally accused cannot be twice put in jeopardy of suffering criminal punishment, we conclude that in this case appellee can be retried on the charge of bastardy, which carries no criminal penalty, in order to make a determination of the issue of paternity.

---

[1] U. S. Const. amend. V; Pa. Const. art. 1, § 10.

[2] Act of June 24, 1939, P. L. 872, § 732, 18 P.S. § 4732, *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, § 5; Act of June 24, 1939, P. L. 872, § 506, 18 P.S. § 4506, *repealed,* Act of December 6, 1972, P. L. 1482, No. 334, § 5.

The defendant in this case, Joseph Anderson, was indicted under §§ 506 and 732, now repealed, and brought to trial before a jury on October 31, 1969. At the trial, counsel for the defense followed a continuous pattern of questioning witnesses in a manner designed to elicit comments and speculation on prosecutrix's chastity, appearance, and conduct at times unrelated to any material event. Numerous objections to this tactic were sustained throughout the trial. At last, when defense counsel was questioning his last witness, the trial judge interjected, "Don't ask what he said or I will hold you in contempt, if you continue with this type of examination. You know this is immaterial. It has no bearing on this case." At this point the court withdrew a juror and declared a mistrial on its own initiative, declaring, "This has been disgraceful." A date was set for a new trial to which the defendant entered a plea of double jeopardy. The plea was sustained by the lower court and an appeal was taken.

The double jeopardy clause acts to bar further prosecution of a defendant who has once been brought to trial on a charge carrying the possibility of criminal punishment. If trial of the defendant is begun on such a charge and the proceedings are aborted before conclusion by the unauthorized declaration of a mistrial, a second attempt to try the defendant on the same charge constitutes double jeopardy. *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1973). In Pennsylvania, motions for mistrial in prejudicial situations are governed by Pa. R. Crim. P. 1118(b) which states: "A motion to declare a mistrial shall be made when the prejudicial event is disclosed. In all cases only the defendant or the attorney for the defendant may move for a mistrial." This rule has been narrowly interpreted to mean that in cases where there has been prejudice to the defendant the trial judge has no power

to declare a mistrial on his own motion. *Commonwealth v. Lauria*, 450 Pa. 72, 297 A.2d 906 (1972). In cases other than those covered by the rule the trial judge has always had the inherent power to declare a mistrial for reasons of "manifest necessity." *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973). We believe that retrial of the defendant on charges involving a criminal penalty is precluded by the principle of double jeopardy which generated Rule 1118(b) and the doctrine of manifest necessity.

The manifest necessity standard requires that the trial judge balance those circumstances which suggest a mistrial is warranted against the defendant's valued right to have his case finalized before a particular tribunal. Only when "a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings"[3] can a trial be aborted and the defendant's option to see the trial to completion be foreclosed. We believe that the circumstances of the present case were not of such an irremediable nature to warrant a declaration of mistrial under this test. The objectional behavior of counsel might have been cured by a means less drastic from the point of view of the defendant than a termination of the proceedings.

The question remains to what degree the offenses with which the defendant stands charged are criminal and subject to constitutional protection. Application of the double jeopardy clause is limited to actions authorizing a criminal punishment for vindication of public justice and is not extended to actions which are remedial in nature. The Supreme Court has reaffirmed the principle first stated in *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938): "Congress may impose both a criminal and civil sanction in respect to

---

[3] *United States v. Jorn*, 400 U.S. 470, 485 (1971).

the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *See One Lot Stones v. United States,* 409 U.S. 232, 235-36 (1972). The determination of whether a statute is criminal or remedial thus involves consideration of the sanctions imposed under the statute and the end to which they are enforced.

In the action before us, the defendant is charged with violation of two sections of The Penal Code. Both sections involve offenses relating to illegitimate children and both are designed to accomplish similar objectives. The first, neglect to support a bastard, is formulated to ensure illegitimate children continuing financial support from their natural fathers. Failure to comply with this statute is punished by a fine or imprisonment. The latter, fornication and bastardy, is directed toward the punishment and deterrence of fornication, a misdemeanor, but it also goes on to provide that a man convicted of fornication is further liable for the support of the resulting child. The act of fornication is made subject to a fine under this section whereas liability for support of the child born thereafter is the only penalty for bastardy. Despite the range of penalties, the central point of the two sections is provision for and enforcement of support for illegitimates. *See Commonwealth v. Dunnick,* 204 Pa. Superior Ct. 58, 202 A.2d 542 (1964); *Commonwealth v. Bertram,* 143 Pa. Superior Ct. 1, 16 A.2d 758 (1940).

In the past in Pennsylvania, support for illegitimates was only available under these two sections of The Penal Code. The Penal Code remained the only recourse for children born out of wedlock until 1963. In that year, the Civil Procedural Support Act of 1953 was amended to include illegitimates as among those

for whom an action for support could be maintained.[4] Under this amendment a support order can now be entered in the case of an illegitimate child without prior criminal proceedings. If the question of paternity is in dispute, the defendant can elect to have the matter settled civilly, before a judge sitting without a jury. *Commonwealth v. Jacobs,* 220 Pa. Superior Ct. 31, 279 A.2d 251 (1971). However, if he demands one, the defendant is entitled to a jury trial to determine the issue of paternity before an order can be entered against him for support. *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A.2d 859 (1968). Therefore, although support for illegitimates can now be resolved in a civil proceeding, the issue of paternity in some cases has to be decided under one of the two sections of The Penal Code before a support order can be entered.

In § 732, neglect to support a bastard, paternity is an issue which must be resolved in order to find that the defendant has an illegitimate child whom he failed to support. Once paternity is established, the defendant can be compelled to support the child. To ensure that the support is forthcoming, the statute provides a sentence of fine or imprisonment whenever neglect or refusal to contribute is found. Violation of this act was clearly intended to carry the possibility of criminal punishment so that the unwilling parent would find it to his advantage to support his children rather than face a possible prison sentence. *Commonwealth v. Bertram,* supra. The defendant in the present case, having once been brought to trial under this act and put in jeopardy of suffering a fine or imprisonment, can not now be retried for the same offense.

Although fornication and bastardy are both treated under § 506, the statute indicates that the two offenses

---

[4] Civil Procedural Support Law, Act of July 13, 1953, P. L. 431, *as amended,* Act of August 14, 1963, P. L. 872, §§ 1 *et seq.,* 62 P.S. §§ 2043.31 *et seq.*

are separate. This Court has recognized the distinction. *Commonwealth v. Shook,* 211 Pa. Superior Ct. 413, 236 A.2d 559 (1967). Fornication is a misdemeanor punishable by a fine, and has been consistently treated as a criminal act. *See, e.g., Commonwealth v. Luciano,* 205 Pa. Superior Ct. 397, 208 A.2d 881 (1965). Bastardy, however, "carries no punishment except an order to support the child and is, in effect if not in law, more civil than criminal, . . ." *Commonwealth v. Dunnick,* supra at 62, 202 A.2d at 544. Although bastardy is joined with fornication in The Penal Code and has therefore been held to be criminal in form,[5] the fathering of an illegitimate child is not in itself forbidden by law or punished as a crime. The provision for support of the child is not intended as a punishment to discourage the birth of illegitimates as is the punishment of fornication. Such a provision for support does no more than secure to the child a financial contribution to defray the costs of its maintenance. The difference between this remedy and the criminal sanctions discussed above becomes even more apparent when the results of the application of these provisions are considered. The imposition of the fine or sentence of imprisonment, penalties contemplated upon conviction of fornication or nonsupport, may tend to discourage the offenses, but are no help to the illegitimate child. The enforcement of support acts not as a penalty but as a remedial device in aid of illegitimate children.[6]

---

[5] *See, e.g., Commonwealth v. Shook,* 211 Pa. Superior Ct. 413, 236 A.2d 559 (1967).

[6] Other jurisdictions have employed a variety of approaches for determining and fixing parental responsibility in cases of illegitimacy. Some include it in their criminal code while others designate it a civil action. See, e.g., Mass. Ann. Laws ch. 272, §18 (1970) (a criminal statute) ; Neb. Rev. Stat. § 13-110 (1954) (a civil statute). Regardless of the terminology, however, it is generally recognized that the overriding purpose of the various procedures is

Since the issue of paternity was left undecided at the first trial, a new trial should be ordered under the bastardy provision of § 506 of The Penal Code. The double jeopardy clause does not bar a retrial for the resolution of paternity under a statute which places the appellee in no danger of criminal sentence. However, a further attempt to try appellee on the charges of fornication or neglect to support a bastard is barred since a criminal penalty is involved.

The order of the lower court is affirmed to the extent that it bars further prosecution on the charges of neglect to support a bastard and fornication; it is reversed to the extent that it precludes prosecution on the charge of bastardy; and in the latter regard the case is remanded with a procedendo.

DISSENTING OPINION BY HOFFMAN, J.:

Although the majority properly concluded that the lower court erred in declaring a mistrial in the instant matter, I respectfully dissent from the majority's find-

---

to provide an action of civil redress for the protection of the child. *See Commonwealth v. Jacobs,* 220 Pa. Superior Ct. 31, 279 A. 2d 251 (1971). The view of some states that bastardy actions or paternity proceedings are criminal or quasi criminal for some purposes has not been determinative of the question of double jeopardy. New York, for example, which like Pennsylvania has adopted criminal procedures to prosecute paternity actions, has held the plea of former jeopardy does not bar further prosecution where a prior proceeding had been terminated before verdict. *Hodson v. Hoff,* 266 App. Div. 228, 42 N.Y.S. 2d 1 (1943). The New York court pointed out that although criminal in form, the essence of the proceeding was civil and that no penal sentence was provided for, an order of support being the only judgment. Other jurisdictions which provide for bastardy as a criminal procedure do not allow a plea of former jeopardy to bar retrial on the basis of the same reasoning. *See, e.g., State v. Jones,* 98 Ohio App. 45, 128 N.E. 2d 228 (1953); *State v. Easely,* 129 W. Va. 410, 40 S.E. 2d 827 (1946).

ing that this improper declaration does not bar further litigation on the issue of appellee's paternity of an illegitimate child. Further proceedings against the appellee are banned by the double jeopardy provisions of the United States and Commonwealth constitutions.

There is no substance for the majority finding that bastardy is not crime. Bastardy is a crime for which the legislature has imposed sanctions. Anyone charged with this offense must receive all the protections guaranteed to an accused by the United States and Commonwealth constitutions. *Commonwealth v. Jacobs,* 220 Pa. Superior Ct. 31, 279 A. 2d 251 (1971); *Commonwealth ex rel. Kolodziejski v. Tancredi,* 222 Pa. Superior Ct. 436, 295 A. 2d 174 (1972).

Indeed, prior to the 1963 amendment to the Criminal Procedural Support Law, an order compelling a man to support his illegitimate child could not even be entered at a civil proceeding, but could only be entered pursuant to a conviction under the penal code. *Commonwealth v. Dillworth,* 431 Pa. 479, 484, 246 A. 2d 859 (1968). The 1963 amendment, however, permits the father of an illegitimate child to avoid the stigma of conviction or the "stigma of pleading guilty to a criminal offense." In instances where the father admits paternity but disputes the amount of the support order, the legislature empowered courts to enter an order of support for an illegitimate child in a civil proceeding. *Commonwealth v. Dillworth,* supra. Where paternity is disputed, and a jury trial demanded, bastardy remains a punishable offense. Neither the Civil Procedural Support Law, nor the 1963 amendment thereto provides for the determination of paternity in a case where paternity is disputed and a jury trial demanded. *Commonwealth v. Dillworth,* supra, 431 Pa. at 486.

In *Commonwealth v. Jacobs,* 220 Pa. Superior Ct. 31, 38, 279 A. 2d 251 (1971), this court recognized the Pennsylvania legislature's determination that bas-

tardy was a crime which was joined with fornication for the purpose of prosecution. Thus, a man who denies paternity and demands a jury trial must receive all the protections guaranteed to an accused in a criminal proceeding. In addition, if such a man is convicted, he must carry the heavy burden of a criminal record and the community stigma which accompanies conviction.

The criminal nature of bastardy was most fully discussed by Judge JACOBS, in *Commonwealth v. Shook,* 211 Pa. Superior Ct. 413, 236 A. 2d 559 (1967) : "The penal nature of Section 506 of The Penal Code in regard to bastardy is apparent from its wording. It provides that anyone who commits fornication is guilty of a misdemeanor and upon conviction shall be sentenced to pay a fine and if found to be the father of the prosecutrix's bastard child, 'shall be sentenced in addition to the fine aforesaid, to pay the expenses incurred at the birth of such child, . . . and to give security, . . . to perform such order for the maintenance of the said child, as the court shall direct.'

"Clearly the legislature in the use of the word 'sentence' contemplated a judgment in a criminal proceeding, not an order in a civil matter. The order for maintenance is the legal consequence of being found guilty of fornication resulting in bastardy and is, under this statute, made a criminal penalty. In Commonwealth v. Pewatts, 200 Pa. Superior Ct. 22, 186 A. 2d 408 (1962), we recognized that Section 506 is punitive.

"We conclude that Section 506 of The Penal Code is penal in nature and as such must be strictly construed.

.  .  .  .

"In fact the statute recognizes that fornication and bastardy constitutes two offenses. . . ." 211 Pa. Superior Ct. at 417-418.

*Commonwealth v. Pewatts,* 200 Pa. Superior Ct. 22, 25, 186 A. 2d 408, 410 (1962), defines bastardy as a crime in the same straight forward language as *Shook*: "Under section 506 of The Penal Code of 1939, . . . fornication is made a misdemeanor subject to a fine of one hundred dollars ($100.00); and when a child is born a separate crime known as 'fornication and bastardy' or simply 'bastardy' is committed. (Citations omitted.) An additional sentence is provided for that crime, viz., the payment of the expenses of the birth and maintenance of the child, and its burial should it have died."

Neither is this viewpoint the product of a recent change in the law. In *Commonwealth v. Rednock,* 165 Pa. Superior Ct. 536, 537, 69 A. 2d 447 (1949), this Court held "[F]ornication and bastardy are two offenses, and on the trial of an indictment charging them a jury could acquit of the bastardy but convict of the fornication. . . . Commonwealth v. Young, 163 Pa. Superior Ct. 279, 60 A. 2d 831; Commonwealth v. Jodlowsky, 163 Pa. Superior Ct. 284, 60 A. 2d 836." This opinion echoes the viewpoint expressed in *Commonwealth v. Losey,* 79 Pa. Superior Ct. 75 (1922) and in *Commonwealth v. Gamica,* 85 Pa. Superior Ct. 396 (1925).

In light of such persuasive authority, this court must realize that the legislature made fathering an illegitimate child a crime. Conviction for this crime carries penalties as well as the stigma of a criminal record. The appellee cannot, therefore, be retried in a criminal proceeding without violating the double jeopardy provisions of the United States and Pennsylvania constitutions. *Commonwealth v. Richbourg,* 442 Pa. 147, 275 A. 2d 345 (1971). Neither may appellee's paternity be determined in a civil proceeding. *Commonwealth v. Dillworth,* supra, guarantees a criminal trial and all the protections accorded thereunder for

any man who denies paternity and demands a jury trial. While the legislature might have better protected the interests of illegitimate children by providing for the civil determination of paternity in all cases, the legislature chose not to do so. Thus, this court may not serve as a super-legislature and concoct procedures to protect the interests of illegitimate children especially where those procedures deny the accused his constitutional rights. The constitution and the legislature having spoken, the question of the appellee's paternity can never be decided in Pennsylvania.

Accordingly, I would affirm the order of the lower court.