Commonwealth *v.* Young, Appellant.

Argued March 22, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Martin H. Philip,* with him *George M. Berg,* for appellant.

*Irving W. Coleman,* with him *Jacob A. Raub,* District Attorney, for appellee.

OPINION BY HIRT, J., July 23, 1948:

The defendant had sexual intercourse with Agnes Jandres, the nineteen-year-old prosecutrix, on June 15, 1946, and on no other occasion. She gave birth to a child on February 25, 1947. Defendant in this prosecution was charged with fornication and bastardy and was found guilty of both. The testimony clearly convicts him of fornication. The question in this appeal is whether the evidence is sufficient in law to support the finding of the jury that the child is the fruit of the coition of June 15, 1946, the only date on which defendant was intimate with the girl.

The difficulty with the Commonwealth's proofs is the admission of the prosecutrix of sexual intercourse with another man. On the first day of the trial she testified that she had intercourse with one Joseph Freeman on each of three successive Saturdays following Easter Sunday in 1946. She was positive in her testimony to that effect. Easter fell on April 21 in that year. Referred to that date, she admitted intercourse with Freeman on April 27, on May 4 and on May 11, 1946, which are 304, 297 and 290 days respectively from the subsequent date of the birth of the child. There is other testimony, notably of the Justice of the Peace who issued the warrant, of her admissions to him of intercourse with Freeman on three occasions in May, 1946. On the second day of the trial she changed her unequivocal testimony of the day before, and stated that all three intimacies with Freeman occurred in the month of April 1946. Her testimony then was indefinite, however, and she did not fix any specific dates in April, although she again insisted that the sexual acts occurred on three successive Saturdays. It is a reasonable inference from the testimony given by her on the first day of the trial that Joseph Freeman is the father of her child. And it is at least doubtful that her changed testimony on the following day excludes that possibility.

Medical authority in general is in agreement to this effect: that while on the average the normal duration of pregnancy in the human female is 280 days, yet the period of gestation may last only 240 days or extend to 300 days or longer. The child, if of the defendant's parentage, was born after a period of gestation of but 255 days. A protracted or a shortened pregnancy often has its effect on the physical development of the child at birth and "as a rule, the longer the gestation, the larger the infant. However, this is not invariably so, for it is by no means unusual to find rather large infants occurring in short periods of gestation, and for cases of protracted pregnancy to give rise to comparatively

small infants. The average weight of full term infants is seven and one-half pounds, but they may vary from three pounds to fifteen pounds": Gonzales, Vance and Helpern, Legal Medicine and Toxicology, page 313, (1940). There is no evidence in this case of the physical aspects of the child at birth, whether under, or over, normal weight and size. Cf. *Souchek v. Karr,* 78 Neb. 488, 111 N. W. 150. But lack of such evidence is not important for on medical authority it would not be controlling.

In the celebrated English case of *Gaskill v. Gaskill,* L. R. [1921] Prob. 425, reported in 21 A. L. R. 1451, the husband in seeking divorce charged adultery on the sole evidence that a child was born to his wife 331 days after his last possible contact with her. Otherwise there was not the slightest evidence of misconduct of the wife. The Lord Chancellor, who heard the evidence in the first instance, adjourned the hearing, and because of the importance of the question to the young couple involved directed the attorney general to appear as amicus curiæ. At the suggestion of the court, the attorney general called "three specialists, stated to be amongst the greatest living English authorities on the subject". From their testimony the court concluded that "having regard to the present state of medical knowledge and belief" it was not impossible for the husband to be the father of the child. One of the experts, who was called, referred to four reported instances, which he accepted as authentic, of pregnancy lasting 323, 324, 331 and 336 days respectively.

In the present case the prosecutrix testified that her last menstrual discharge was in June 1946. That fact is not inconsistent with conception from intercourse with Freeman either in the prior April or May. Gonzales, Vance and Helpern, Legal Medicine and Toxicology, supra, p. 313. In the *Gaskill* case, the wife gave evidence of menstruation one month after the departure of her husband. One of the specialists whose testimony was

accepted by the court considered that point of little importance and gave it as his opinion that two or even three subsequent discharges are not inconsistent with pregnancy. All of the works on medical jurisprudence, available to us, indicate the possible duration of pregnancy so protracted as to cast more than a reasonable doubt on defendant's parentage of the child. In 3 Wharton & Stille's Medical Jurisprudence, 5th Ed., Chap. III, §66, p. 39, following a recital of accepted data, it is said: "From the foregoing facts we can but come to the conclusion that, though the normal period of gestation is 275 to 282 days from the end of the last menses, or 270 days from a single coition, the pregnancy may be protracted to 334 days after coitus, or 344 days after the menses . . ." In section 62 at page 34, of the same chapter reference is made to authenticated instances where the periods of gestation were 311, 313, and 317 days respectively. Alfred W. Herzog in his Medical Jurisprudence, Chap. XLIV, §966, p. 677, refers to a case "reported by von Winckel, in which delivery occurred 321 days after coitus and another in which a child was born 336 days after the first day of her last menses". In Witthaus & Becker, Medical Jurisprudence, Vol. 2, 2nd Ed., p. 508, it is said: "We learn from experience, however, that the average apparent duration of pregnancy is ten lunar (nine calendar) months, or forty weeks, or two hundred eighty days from the beginning of the last menstrual period, or two hundred and seventy-two days from the date of conception". But "In England and America we find no absolute limit laid down. Each case is determined upon its merits. In America a liberal view is taken, and the legitimacy of birth at the completion of 313 and 317 days" has been recognized. The text books relied upon by medical men are to the same general effect. One of the most notable authorities, perhaps, is DeLee-Greenhill, Principles and Practice of Obstetrics, Eighth Edition, (1943). In the chapter discussing the subject it is said, p. 96: "The

most reliable datum from which to estimate the beginning of pregnancy is the date of fruitful coition, and, reckoning from this day, pregnancy has been found to vary from two hundred and twenty to three hundred and thirty days, the average being two hundred and seventy days".

The applicable principles of law are well defined. Juries are prone to accept a woman's testimony as to who is the father of her child. But a prosecutrix may not be permitted to select one of two men as responsible if both of them had intercourse with her about the time that conception may have occurred. *Com. v. Eaby,* infra. The present appeal is ruled by the principles to which we referred in *Commonwealth v. Rex,* 147 Pa. Superior Ct. 121, 24 A. 2d 98, thus: "Where bastardy is charged, a fact extremely important in the inquiry is whether the mother of the child had connection with others than the defendant at or about the time the child was begotten. If so, it is impossible for her to determine to which of them her conception is to be imputed. Com. v. Fritz, 4 Clark 219. The admission of a number of connections at about the time of conception destroys her competency as a witness to prove that the defendant is the father. It is only where such relations with others are denied by the mother and the proof of them rests upon the testimony of other witnesses that an issue for the jury is presented. Com. v. McCarthy, 2 Clark 351; Com. v. Eaby, 52 Pa. Superior Ct. 619".

From the admissions of this prosecutrix, the father of her child might have been either Freeman or the defendant, and she cannot be permitted to choose between them. The Commonwealth's testimony therefore falls far short of proof of bastardy beyond reasonable doubt and does not rise higher than a mere balance of probabilities as to which of the two was responsible for her conception. Under the circumstances, certainly, defendant is entitled to a new trial at least. But in view of the fact that we could not permit any subsequent con-

viction of bastardy to stand because of the testimony of the prosecutrix at the present trial, we will make final disposition of the charge.

The judgment of sentence as to bastardy is reversed and the record is remitted for sentencing of the defendant on the conviction of fornication alone.