## Commonwealth v. Gross

*Bernard J. Hessley*, for petitioner.
*Mark M. Ristau*, for defendant.

WOLFE, P. J., September 6, 1972.—This is an action brought by Linda D. Gross, mother of Lynn Nicole Gross, against defendant for support of her child. Defendant denies he is the father and, consequently, has no legal obligation to support her.

The parties were married on September 24, 1971. The child was born on December 22, 1971, and weighed eight pounds at birth.

According to petitioner, she did not remember the exact date of her first premarital sexual intercourse with defendant but believed it to be about the middle of May 1971, and it may have been after two dates with defendant.

Defendant testified his first date with petitioner was a Saturday on June 5, 1971, and he admitted he had sexual intercourse with her on the twelfth or thirteenth of June of 1971.

Petitioner admitted she had sexual intercourse with another man but, again, she is not certain the exact month or date of the month this occurred but finally concluded it was in February 1971. She was unable to recall whether it was at the beginning, middle or end of that month. She states that on both occasions with both men they used a contraceptive although she did not.

The court granted defendant's petition for a blood grouping test which was done on the three subjects by a qualified pathologist who performed two tests on different dates and the results of the blood grouping tests are as follows:

### ABO Group

|  | A | B | O serum | Group |
|---|---|---|---|---|
| William Harold Gross | — | — | — | O |
| Linda Daisy Gross | — | + | + | B |
| Lynn Nicole Gross | — | — | — | O |

### MN Group

|  | M | N | Group |
|---|---|---|---|
| William Harold Gross | + | — | M |
| Linda Daisy Gross | + | + | MN |
| Lynn Nicole Gross | — | + | N |

### Rh Group

|  | C | D | E | c | e | Group |
|---|---|---|---|---|---|---|
| William Harold Gross | + | + | — | + | + | $R_1r$ |
| Linda Daisy Gross | + | + | — | + | + | $R_1r$ |
| Lynn Nicole Gross | — | — | — | + | + | rr |

*Summary*

William Harold Gross, Group O, M, $R_1r$
Linda Daisy Gross, Group B, MN, $R_1r$
Lynn Nicole Gross, Group O, N, rr

The pathologist, Dr. Lipphard, of the Warren Gen-

eral Hospital, also had the Phillip Levine Laboratories, of Ortho Diagnostics, perform a grouping for M and N factors, together with testing for Mg. The consultant laboratory confirmed the results obtained by the pathologist that William Harold Gross was Group M and Lynn Nicole Gross Group N. Both subjects were negative for Mg.

On the basis of these groupings, the pathologist concluded defendant must be excluded as the father of Lynn Nicole Gross.

The only possible exception in his opinion was a very remote possibility defendant was $MN_2$ and Lynn Nicole Gross $NN_2$. He concludes that if this were the case, paternity on the part of defendant could not be excluded.

He was of the opinion, however, that the incident of $N_2$ is so rare that the possibility is most unlikely. In this respect he cites authorities in the field, who were able to test for $N_2$, demonstrated the presence of $N_2$ only eight times in 20,000 paternity cases over a period of 10 years and concluded that the incident of $N_2$ was "too remote to be of practical importance."

Notwithstanding, Dr. Lipphard finally concluded, after consideration of all of the grouping tests, that defendant is excluded as the father, but did qualify it by stating that his opinion was made with almost absolute certainty.

The Act of July 13, 1961, P. L. 587, sec. 4, 28 PS §307.4, provides:

"If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. *If the experts disagree in their findings or conclusions, the*

*question should be submitted upon all the evidence."* (Italics supplied.)

We find from the conclusion of Dr. Lipphard that the groupings are not conclusive to exclude defendant as the father because no testing could be done for the presence of $N_2$ factor and, consequently, the court is obligated to resolve the question upon all of the evidence.

It appears after inquiry by counsel for both parties a testing for the presence of factor $N_2$ is not possible as there is no existing anti-$N_2$ serum in the United States. The testings that have been made were done by Europeans, the results of which Dr. Lipphard based his conclusions.

If we accept the mother's testimony, to the best of her knowledge, her first intercourse with defendant was May 15, 1971, this means the child was born after 222 days of gestation, or 31.71 weeks.

Dr. Lipphard testified the normal gestation period is 10 lunar months of 28 days each or 280 days. In his opinion, a gestation period of only seven months would produce a fetus under four pounds and would be premature.

If we use the mother's recollection date of having intercourse with the other man in February and assume it was on the first day of February to the date of birth, this would be 325 days; however, if we deduct the month of February and assume the intercourse was at the end of February, this would be a gestation period of 297 days.

In a very extensive and educational opinion by Judge Woodside in his dissent in the case of Commonwealth v. Watts, 179 Pa. Superior Ct. 398, 402 (1955), we find from his research into medical testimony, citing Judge Hirt in Commonwealth v. Young, 163 Pa. Superior Ct. 297, 60 A. 2d 831 (1948), that

"Medical authority in general is in agreement to this effect: that while on the average the normal duration of pregnancy in the human female is 280 days, yet the period of gestation may last only 240 days or extend to 300 days or longer."

We also find in the Watts case that there have been many cases on record where there has been a showing of menstrual flow after conception has taken place.

In the current case, petitioner testified her last menstrual cycle was near the end of April but she acknowledged she had no regular cycle and also testified she had a menstruation after her sexual intercourse in February.

At the time of hearing the child was present and the court afforded an opportunity to view the child and defendant. Petitioner also submitted into evidence a photograph of the child seven weeks old and directed the court's attention to the similarity between the features of the child in the photograph and defendant's mother.

Although the court could readily discern the similarity between the child's photograph and defendant's mother, it could not discern any similarity between the child and defendant but did discern a similarity between the child and petitioner's mother who held the child at the time of view.

Petitioner, although requested, would not state with certainty prior to the hearing that the child was, in fact, her husband's. Defendant never paid any of the lying in expenses for the birth of the child and left petitioner on December 2, 1971, before her birth and the parties have not cohabitated as husband and wife since.

According to Lawyers' Medical Cyclopedia, Vol. 5, p. 420, a child with a gestation period between 32 to 33 weeks would weigh three and one-half to three and

two-thirds pounds and would be considered a premature child with 80 percent chance of survival.

From the reading of the cases, it now appears that the normal gestation period the courts have adopted and accepted from medical experience and practice is nine months or 282 days, give or take two weeks either way. See Commonwealth v. Young, supra; Commonwealth v. Jodkowsky, 163 Pa. Superior Ct. 284, 60 A. 2d 836. ·

Here, petitioner was not at all certain when the relationship with the first man took place and could not conclude a date in February when this may have occurred. On crossexamination she testified:

"Q. Did you have intercourse with persons other than William Gross during the months of March, April, May or June of 1971?

"A. I have, yes, but that was long before then.

"Q. Long before those months?

"A. Yes, and I can't recall the months. No.

"Q. Was it during the year 1971?

"A. I suppose so, yes, but at the very beginning of the year.

"Q. To the best of your recollection, Mrs. Gross, it would have been during the year 1971. Is that correct?

"A. Yes.

"Q. And approximately somewhere in the month of January of that year?

"A. I think it was in February.

"Q. . February. You can't recall the date?

"A. No, I can't.

"Q. Could you recall whether it was at the first part of the month, during the middle of the month, during the latter part of that month?

"A. No, I can't recall.

"Q. But it was most likely, as best you can recollect, during the month of February?

"A. Yes."

On her redirect examination concerning her first date and sexual intercourse with defendant, petitioner testified as follows:

"Q. Now, Mrs. Gross, you had your first date with William Harold Gross in May of 1971?

"A. Yes.

"Q. Now you said, I believe, sometime in the middle of the month. Now can you be more specific as to days? What do you consider to be the middle of the month?

"A. I don't know. It was just the middle of the month to me.

"Q. How many days does May have?

"A. 31.

"Q. Well, what's the middle of May? About the 15th?

"A. Yes.

"Q. Is that what you mean when you say the middle of May?

"A. (Witness nodded in the affirmative.)

"Q. Now Mrs. Gross, being as specific as you can, when did you first have sexual relations with William Harold Gross?

"A. I don't recall the exact date.

"Q. Well, what month was it?

"A. It was in May.

"Q. Was it the middle of May?

"A. Yes."

Obviously, Mrs. Gross is uncertain when she had her first relation with the other man and defendant, but considering the full gestation period would have ensued to produce an eight-pound baby, it would not be unreasonable, but indeed highly probable and most likely the relationship occurred at the end of February resulting in a gestation period of 297 days which would be

well within the accepted period of time for a full pregnancy.

We cannot explain how, and there is no evidence to at all indicate, the child would weigh eight pounds if it merely underwent 31.71 weeks of growth. Dr. Lipphard testified to the contrary and was also of the opinion that it was highly improbable on the blood grouping tests that defendant could be the father of this child. Indeed, he excluded the child on the two groupings that he could perform and was only hesitant because of lack of means to test for the third method but the percentages of probability were so low in his opinion that it could not reasonably be concluded defendant was the father of the child.

If we use the accepted methods of calculation of a full pregnancy of 280 days to 282 days with a leeway of two weeks either way for birth, we are compelled to conclude it is more probable that the sexual relations had by petitioner in February was the fruitful one that produced the child.

We have seriously considered all of the evidence in this case and appreciate the impact in illegitimatizing the child in question. However, it is an ineluctable conclusion from all of the evidence that defendant cannot be the father of this child and, therefore, the court makes the following

## ORDER

And now, to wit, Septembe- 6, 1972, the court finds defendant William Gross is not the father of Lynn Nicole Gross and has no legal obligation to support said child.