378 A.2d 1239

**COMMONWEALTH of Pennsylvania**

v.

**Woodrow Frank SMITH, Appellant.**

Superior Court of Pennsylvania.

Submitted April 15, 1977.

Decided Oct. 6, 1977.

462

Anthony V. DeCello, Pittsburgh, and DeCello, Bua & Manifesto, Pittsburgh, for appellant.

David B. Douds, Assistant District Attorney, Hermitage, and Samuel J. Orr, IV, District Attorney, Greenville, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

This case arises on appeal from a judgment of sentence based on jury verdicts finding appellant guilty of possession of heroin and possession with intent to deliver in violation of the Controlled Substance, Drug, Device and Cosmetic Act of

1972, 35 P.S. 780–101 et seq. Post-trial motions in arrest of judgment and for a new trial have been denied. On appeal, appellant challenges the sufficiency of the evidence to sustain the jury verdicts and contends that in three instances counsel for the Commonwealth made a remark or asked questions which were so inflammatory or prejudicial as to deprive the appellant of a fair trial.

The factual circumstances of this case are not in dispute. At 12:45 A.M. on December 5, 1974, two officers of the Shenango Valley Narcotics Unit, along with other police officers, went to the front door of a residence at 824 Lee Avenue in Farrell in order to execute a search warrant. The house was jointly owned by Frank Smith, the appellant's father and Tammy Jean Smith, the appellant's wife. The elder Mr. Smith resided there with his wife and several young children and grandchildren. The appellant did not have a possessory interest in the house nor did he reside there on a regular basis.

After noticing a light in the living room, the officers knocked on the front door and shouted their identity and purpose for some two or three minutes. When there was no response, they forcibly entered. Upon entering they observed in a bed in the enclosed porch of the house a woman identified as the girlfriend of appellant. The officers also observed through an open window several men, none of whom were members of the Frank Smith household, sitting on or about a sofa in the living room. Proceeding to the living room, the officers found all the occupants, with one exception, within two or three feet of the sofa and an adjacent coffee table. They specifically observed the appellant at the far right-hand corner of the table, although he immediately attempted to move toward the door leading to the dining room where he was apprehended. When apprehended, he was described as glassy-eyed, stuporous, incoherent, staggering and weaving, a condition characteristic of one under the influence of heroin. Appellant was wearing only a pair of pants, an undershirt and suspenders and was shoeless. All the others, with the exception of his girlfriend who was in sleeping wear, were fully clothed.

The officers also observed on or about the coffee table 67 glassine bags of heroin, a plastic bag of uncut heroin and an open foil of heroin. The officers estimated the "street value" of these bags to be $3,000. They also observed on the coffee table various paraphernalia for the injection of the drug, including a number of syringes, a "cutting" spoon, swabs of cotton and a bottle of cleansing alcohol.

None of the parties, with the exception of one (not the appellant) who was taken into custody with a syringe in his left arm, was observed with any of the drug or paraphernalia on his person. Further, none was seen dropping nor attempting to secrete any of these objects.

Finally, appellant's bail bondsman testified that appellant had jumped bond and fled the jurisdiction but had been apprehended in New York City and returned for trial.

The appellant contends that the evidence introduced by the Commonwealth fails to establish anything more than his mere presence in the house and his knowledge that the drug was there, neither of which is sufficient to support a conviction for possession. *Commonwealth v. Reece,* 437 Pa. 422, 427, 263 A.2d 463 (1970).

Appellant's reliance on this position is misplaced for the Commonwealth's evidence establishes a number of circumstances linking appellant to the heroin. Most significant is the fact that appellant was found under the influence of an opiate-derived drug at the time of the raid. In *Commonwealth v. Ambers,* 225 Pa.Super. 381, 310 A.2d 347 (1973), this court held that evidence that the appellant and a co-defendant were under the influence of drugs at the time of a raid was sufficient to support a possession conviction. In fact, the evidence in the instant case is stronger than in *Ambers* because the contraband was found only two or three feet from the appellant and not in another room as was the case in that decision.

This in itself would be sufficient to support the conviction in the case at bar but there are additional circumstances which reinforce this conclusion. First, the appellant admit-

ted that he was an addict. Second, although he had no ownership interest in the house and although he did not reside there on a regular basis, it could be reasonably inferred from his attire at the time of arrest, his relationship to the owners, the presence of his girlfriend in sleeping wear and the absence of any member of the Frank Smith household on the first floor of the house at the time of the raid that he was in control of the area in which the contraband was being handled. Finally, the evidence of his flight following the posting of bond was probative of a consciousness of guilt. The jury had ample basis for its verdict that appellant had been in possession of heroin at the time of his arrest.

■ The Commonwealth's evidence relative to its second indictment, possession with intent to deliver, was also sufficient. "Delivery" is defined in the Act, 35 P.S. 780–102, as "the actual, constructive or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is any agency relationship".

Appellant was in control of the area in which heroin with a "street value" of $3,000 and paraphernalia suitable to its preparation for street sale were found. A sizable amount of money (some $575) in bills of large denomination were found under the mattress on the bed where appellant's girlfriend was sleeping. The clear inference to be drawn from all of this was that the appellant was not only in possession of the heroin but that he possessed it with the intention of using it for other than personal needs.

The sufficiency of this evidence is illustrated by *Commonwealth v. Santiago,* 462 Pa. 216, 223–5, 340 A.2d 440 (1975) where the police, in conducting a raid on the appellants' home, found the appellants in possession of $250,000 worth of heroin, a number of empty glassine packets, rubber bands, razor blades and other paraphernalia. This was held sufficient to support a conviction of intent to deliver, the inference being appropriate that the drug was possessed with the intent to making future transfers, either by sale or other

distribution. While the operation in the case at bar is not of the same magnitude, it was large enough that all of the attributes of *Santiago* are present.

■ In a criminal case the test of the sufficiency of evidence is whether, viewing all the evidence submitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Edwards,* 466 Pa. 336, 338, 353 A.2d 383 (1976) and *Commonwealth v. Green,* 464 Pa. 557, 565, 347 A.2d 682 (1975). The evidence and the inferences reasonably to be drawn from it amply sustain the conviction of and sentencing of appellant both for possession of heroin and possession with intent to deliver.

Appellant makes the further arguments that his conviction should be set aside because of prejudicial conduct on the part of the Commonwealth's counsel in the following respects: (1) in mentioning the amount of appellant's bond in counsel's opening statement; (2) in mentioning a prior trial of some of appellant's associates; and (3) in questioning a witness as to the selling of heroin by a dealer where he himself shot heroin.

■ The first incident arose during the District Attorney's opening remarks to the jury wherein he said that appellant after his arrest had posted a $50,000 bond. This was followed by evidence at the trial that appellant had jumped the bond and fled the jurisdiction until apprehended. Generally when a person commits a crime and flees or conceals himself such conduct is evidence of a consciousness of guilt and may form the basis from which guilt may be inferred. This principle is applicable not only to cases involving flight or concealment occurring immediately after the perpetration of a crime but also to cases involving flight occurring after arrest and release on bail. *Commonwealth v. Liebowitz,* 143 Pa.Super. 75, 83–4, 17 A.2d 719 (1941); *Commonwealth v. Myers,* 131 Pa.Super. 258, 264–5, 200 A.

143 (1938). Consequently, the bondsman's testimony as to the purchase of the bond and appellant's default thereon by fleeing the jurisdiction was properly admitted as evidence of a consciousness of guilt. The bond was purchased by appellant's father. The size of the bond on which the appellant was defaulting would be some measure of his concern. The amount of the bond was not essential, although certainly relevant to the testimony that appellant had fled the jurisdiction. We find nothing inflammatory or prejudicial in stating the amount of the bond which requires the granting of a new trial.

■ Appellant's next contention is that a motion for mistrial should have been granted because of a question by the Commonwealth's counsel to one of the arresting officers concerning an earlier trial of the others arrested with appellant. The record reads:

"Q. Were you at the last trial in this case?

"A. Yes, I was.

"Q. How many black defendants were on trial at that time?

"A. I believe there were seven.

"At this point, defense counsel objected and moved for a mistrial. A sidebar conference ensued in which the court overruled the objection and refused the motion. Following the sidebar, however, the court gave the following instruction to the jury: 'I would point out to the jury that the trial Mr. Banks has referred to did not include this defendant here. It was other people.'"

A review of the testimony in the framework of the prosecution's examination indicates that it was introduced solely to place certain Commonwealth exhibits in their proper perspective with respect to the other individuals arrested with appellant. Significantly, neither Commonwealth's counsel nor the witness made any mention of the result of the prior trial of the others. The contention that a jury could draw an inference that appellant's companions had been convicted is tenuous. In the light of the purpose for which the testimony was introduced, the fact that it did not

go into the result of the prior trial and the court's cautionary instruction above quoted, it is our conclusion that any error which may have occurred was harmless beyond a reasonable doubt in view of the strong evidence supporting the jury's verdicts.

■ The third objection to the conduct of the trial is addressed to the refusal of the court to grant a mistrial following questions by Commonwealth's counsel to one of the arresting officers concerning the use of heroin by a seller of the drug at so-called "shooting galleries". In the course of his earlier cross examination of the arresting officer, appellant's counsel had elicited from him the fact that it was his experience that everyone at a "shooting gallery" did not necessarily use the drug. On redirect, Commonwealth's counsel questioned the officer about this and the officer affirmed his earlier statement that it was his experience that not everyone at the "shooting gallery" used heroin. Then followed this colloquy:

"Q. Have you ever been at a shooting gallery where the seller of heroin did not shoot?

"MR. DE CELLO: Objection, Your Honor.

"THE COURT: Yes—

"MR. DE CELLO: This question—

"THE COURT: . . . we sustain the objection, it's irrelevant.

"Q. Next question, have you ever been at a place where the seller sold heroin to other people and where he, himself, shot himself at the same time?

"MR. DE CELLO: Objection.

"THE COURT: Sustain the objection.

"MR. DE CELLO: May we come to sidebar, please?

"THE COURT: Yes.

(SIDEBAR CONFERENCE)

"MR. DE CELLO: At this time, your Honor, I think both questions are now so prejudicial and inflam-

matory to my client and ask for a mistrial or withdrawal of a juror. There is no basis whatsoever to show Mr. Smith as a seller and the mere fact that he is asked the question has now implicated that."

We find no error in the court's ruling. The appellant's objections to the questions were sustained and their irrelevance noted to the jury by the court's ruling. Appellant's contention that the mere asking of these questions so prejudiced him as to require a mistrial is a strained one. Moreover it is to be noted that the appellant had opened the door to such questions by eliciting on cross examination testimony about "shooting galleries". Finally, a review of the entire record relative to this matter indicates that the only inference that could justifiably be drawn by the jury was the one that the appellant had initially elicited; namely, that some people at these "shooting galleries" did not shoot heroin.

■ Where, under all the circumstances of a case a verdict rendered is a just one, the language or questions of the prosecuting officer which will justify a reversal must be such that its unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the appellant so that they could not fairly weigh in his behalf such circumstances of doubt, extenuation or degree of guilt that may be present in the case and thus make them unable to render a true verdict: *Commonwealth v. Hoffman,* 439 Pa. 348, 354, 266 A.2d 726 (1970); *Commonwealth v. Meyers,* 290 Pa. 573, 580–1, 139 A. 374 (1927).

Appellant has had a fair trial. The undisputed testimony and the inferences reasonably to be drawn from it clearly sustain the jury's verdicts. The alleged improprieties in the District Attorney's conduct of the case are not sustained.

Affirmed.

HOFFMAN and PRICE, JJ., dissent.