419 A.2d 57

COMMONWEALTH of Pennsylvania

v.

George YOUNG, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 11, 1979.

Filed Feb. 22, 1980.

Samuel J. Marks, Philadelphia, for appellant.

Laurie McKissock, Assistant District Attorney, Philadelphia, submitted a brief on behalf of Commonwealth.

Before PRICE, WIEAND and VAN der VOORT, JJ.*

* Judge DONALD E. WIEAND is sitting by special designation.

PRICE, Judge:

On June 19, 1978, following a non–jury trial, appellant was convicted of neglecting to support a bastard.[1] Post–trial motions were denied, and this appeal followed. For the reasons stated herein, we affirm the order of the trial court.

As appellant's primary contention concerns the sufficiency of the evidence, we must take particular care in examining the trial testimony. Ms. Shirlene Bennett testified that she met appellant sometime in March of 1971. They quickly became good friends, and the two engaged in sexual relations for the first time at the end of that month. For the rest of 1971, the couple dated and had intercourse once or twice a week. At the end of April 1971, Ms. Bennett missed a menstrual period, but she did not seek medical aid until June or July when she visited a Temple University Clinic.[2] She was bleeding sporadically prior to the consultation, and was advised at that time that she was two to three months pregnant. (N.T. 12). Ms. Bennett admitted a single sexual contact with one Virgil Smith on May 15, 1971, subsequent to her missed menstrual period and prior to the confirmation of her pregnancy. She testified, however, that she had started taking birth control pills on May 3, 1971,[3] (N.T. 13–14) thus providing a basis for finding no one other than appellant could be the father of the child. She had further sexual contacts with appellant subsequent to May 15, 1971, and also subsequent to being taken off the birth control pills in June of 1971.

1. 18 Pa.C.S. § 4323. This section was repealed by the Act of April 28, 1978, P.L. 106, No. 46, § 3. The latter became effective on June 26, 1978, and by its own wording did not affect any prosecution, such as the instant one, instituted prior to that date. We note that this court has recently upheld the constitutionality of 18 Pa.C.S. § 4323. *Commonwealth v. Rebovich*, 267 Pa.Super. 254, 406 A.2d 791 (1979); *Commonwealth v. Baggs*, 258 Pa.Super. 133, 392 A.2d 720 (1978).

2. The exact month of the visit is unclear. Ms. Bennett originally mentioned June or July 1971, (N.T. 12) but later appeared to settle on June. (N.T. 14).

3. She was taken off the pills during the same visit at which she was told of her pregnancy.

On February 1, 1972, Ms. Bennett gave birth to a baby girl, who she described as full–term, (N.T. 14). On the birth certificate, Ms. Bennett listed Mr. Smith as the father because, as she testified, "[appellant] was getting on my nerves . . . and lying, and I just didn't want to put his name down . . . If I had known you could leave it blank, I would have . . . " (N.T. 19).[4] Ms. Bennett further stated that while she informed appellant of the child's birth, she did not immediately ask him for economic assistance in raising Tamika. She did, however, subsequently ask appellant for money, and he generally complied by providing her with a small amount every week or two until 1974,[5] when his contributions, and her requests, temporarily stopped. In November of 1976, the witness again asked appellant for money, and he responded by giving her $20. Following this incident, the two stopped speaking to each other. Although payments ceased, Ms. Bennett insisted that she instituted the present suit on March 21, 1977, not to compel child support payments from appellant, but merely to allow her daughter the potential use of appellant's social security benefits.

Upon assuming the stand, appellant contended that he never had sexual relations with Ms. Bennett, nor did he in any way contribute to the support of Tamika or Ms. Bennett. He claimed that during 1971, he never dated Ms. Bennett and devoted himself exclusively to his future wife. The only times that he saw Ms. Bennett were during parties or when she picked up his brother while the two were dating. Appellant also noted that, prior to the birth of Tamika, he attended a party given by Ms. Bennett for the purpose of celebrating her having a child by Virgil Smith.

Prior to reaching the question of sufficiency, we must first dispose of appellant's allegation that the prosecution

4. Ms. Bennett also signed Mr. Smith's name to a kindergarten application for Tamika, but then crossed it out and placed appellant's name under Mr. Smith's.

5. Testimony was also received from Martha Thomas, Ms. Bennett's sister, to the effect that appellant occasionally gave Ms. Thomas small sums of money for Tamika's support.

should have been barred by the statute of limitation. 18 Pa.C.S. § 4323(b) provides that

"All prosecutions under this section must be brought within two years of the birth of the child, except where the reputed father shall have voluntarily contributed to the support of the child, or shall have acknowledged in writing his paternity, in which case a prosecution may be brought at any time within two years of any such contribution or acknowledgment by the reputed father."

Obviously, the prosecution here was initiated more than two years following the birth of Tamika. At trial, however, Ms. Bennett testified that appellant gave her $20 in November of 1976, a time within two years of the filing of the indictment. Although appellant would argue that Ms. Bennett did not state that he specifically paid the money for the support of Tamika, this measure of specificity is not required. Immediately prior to inquiring about the $20 payment, the prosecuting attorney had extensively questioned Ms. Bennett on appellant's contribution for Tamika's support.[6] Viewing her answer in context, it is clear that Ms.

**6.** Pertinent portions of the exchange follow:

"Q. [Assistant District Attorney]: And prior to April of '72, how much money had Mr. Young given you?

A. [Ms. Bennett]: I say about, different amounts like five dollars or six, if I asked him, when I needed, like, something.

Q. And with what type of frequency would he give you money? how often?

A. I say maybe every two weeks, once a week.

Q. And at any point did that frequency stop that he was not giving you money?

A. No. Whenever I asked him he would give it to me. He never gave me like a certain amount every week or anything like that, just whenever I needed it I would ask him.

. . . . .

Q. Now, at any point in time did Mr. Young stop giving you money for Tamika?

A. *I say about when she was about two.*

Q. *That was in 1974?*

A. Right.

. . . . .

Q. And at any time, did you at any point in time did you change your mind and again seek money from Mr. Young?

A. About two years later.

Q. From what date are we talking about? *That would be '76?*

Bennett was referring to a payment for the child's upbringing.

Appellant's primary contention is that the evidence adduced at trial was insufficient to ascribe to him the paternity of the child, a necessary element of the crime to be proven by the Commonwealth. *Commonwealth v. Dunnick*, 204 Pa.Super. 58, 202 A.2d 542 (1964). It is well established that the test of the sufficiency of the evidence is whether, viewing all the evidence submitted at trial in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Edwards*, 466 Pa. 336, 353 A.2d 383 (1976); *Commonwealth v. Smith*, 250 Pa.Super. 460, 378 A.2d 1239 (1977). Measured by this standard, the evidence was sufficient to sustain appellant's conviction.

We reach this conclusion through a combination of calculations based on Tamika's birthdate and Ms. Bennett's testimony.[7] The latter testified that Tamika was a full–term baby when born on February 1, 1972. Assuming a normal gestation period of 272–280 days,[8] conception would have

> A. Right.
> Q. Do you remember what month?
> A. *November.*
> Q. *What happened in November of '76?*
> A. *He came through down where I was working at, his cousin's bar, I was a barmaid at night, and he came down there and he gave me $20.* That was the end of that, because we stopped speaking again after that." (N.T. 16–18) (emphasis added).

7. Appellant argues that Ms. Bennett's testimony is not only unworthy of belief, but that she herself is incompetent to testify because she admitted to sexual relations with one other than the putative father at a time near conception. *See Commonwealth ex rel. Lonesome v. Johnson*, 231 Pa.Super. 335, 331 A.2d 702 (1974). We need not address the merits of this contention, for appellant has waived it by failing to object to Ms. Bennett's testimony at the time of trial. *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978); *Commonwealth v. Speicher*, 259 Pa.Super. 433, 393 A.2d 904 (1978).

8. For a lengthy review of medical evidence pertaining to the possible lengths of gestation, *see Commonwealth v. Young*, 163 Pa.Super. 279, 60 A.2d 831 (1948).

occurred between April 20 and May 5, 1971. As Ms. Bennett testified that she engaged in sexual activity exclusively with appellant during this period, this would point strongly toward appellant as the child's father. As we recognized in *Commonwealth v. Young*, 163 Pa.Super. 279, 60 A.2d 831 (1948), however, the average period of gestation is simply that, an average, with the period ranging from 240 to 300 days. Utilizing this expanded period in conjunction with Tamika's birthdate, the dates of possible conception range from April 7 to June 6, 1971. While this would have encompassed the time of Ms. Bennett's sexual activity with Mr. Smith [9] (May 15, 1971), the former's testimony that she began taking birth control pills on May 3, 1978, coupled with the fact that the child would have been slightly premature had conception occurred on May 15, substantially eliminates Mr. Smith as a possible father.

Moreover, the testimony of both Ms. Bennett and her sister establish that appellant contributed to the support of Tamika at various times. It is highly unlikely that anyone who knew Ms. Bennett only by sight, as appellant alleged, would have contributed even small amounts to the child's upbringing. Of course, appellant denied making any of these payments, and there are no receipts involved, but that is a matter of credibility to be determined by the trier of fact, *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Washington*, 259 Pa.Super. 407, 393 A.2d 891 (1978), and as it has been decided against appellant, we will not disturb that determination.

The order of the court of common pleas is affirmed.

WIEAND, J., files a dissenting statement.

9. Generally, a conviction in a bastardy prosecution may not be sustained if the mother had intercourse with one other than the defendant during the period within which the child could have been conceived. *Commonwealth v. Rankin*, 226 Pa.Super. 37, 311 A.2d 660 (1973); *Commonwealth v. Harbaugh*, 201 Pa.Super. 360, 191 A.2d 844 (1963).

WIEAND, Judge, dissenting:

I respectfully dissent. Where, as here, the mother of a child has had intercourse with one other than the defendant during the period in which the child would have been conceived and she later causes such other person to be named as father on the child's birth certificate, her trial testimony naming appellant as the father of her child is insufficient to establish appellant's paternity beyond a reasonable doubt. *Commonwealth v. Rankin*, 226 Pa.Super. 37, 311 A.2d 660 (1973).

Moreover, the instant prosecution was not brought within two years of the birth of the child; and, therefore, it is now barred. The two year period cannot be extended by an isolated payment to the prosecutrix of $20 where there is no designation by the defendant that the money is given or is to be used for the support of the prosecutrix's child. See: 18 Pa.C.S. § 4323(b).

For both reasons, I would reverse the judgment of sentence and order appellant discharged.