J-S49045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                 :                  PENNSYLVANIA
                          :
            v.                   :
                          :
KYLEAF  TEAGLE                  :
                          :
          Appellant        :      No. 2634 EDA 2018

Appeal from the Judgment of Sentence Entered May 11, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002670-2017

BEFORE:   BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED NOVEMBER 26, 2019**

Appellant Kyleaf Teagle appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his conviction by a jury on the charges of first-degree murder, carrying a firearm without a license, possessing an instrument of crime, and carrying a firearm on a public street or public property in Philadelphia.[1]  After a careful review, we affirm Appellant's judgment of sentence.

Following his arrest in connection with the shooting death of Salim Abdul-Latif, Appellant proceeded to a jury trial on May 7, 2018.  In its opinion,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 907(a), and 6108, respectively.

the trial court aptly summarized the testimony offered at the jury trial as follows.

Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

On the morning of June 16, 2016, Salim Abdul-Latif [("Abdul-Latif")], the decedent, arrived at the house of his friend, Walter Hill, on the 5100 block of Arbor Street. [Appellant's] brother, Imiear Teagle [("Imiear")], was already there. [Appellant] and his brother had been friends with Abdul-Latif their whole lives and, although they were not related by blood, considered Abdul-Latif as their cousin. At that time, Imiear, Abdul-Latif, and Hill often hung out at Hill's house because Hill was on house arrest for a robbery conviction. [At] [a]round 1:15 p.m., Abdul-Latif began to exchange several phone calls with [Appellant]. After receiving one such call, Abdul-Latif went into the bathroom. When Abdul-Latif came out of the bathroom, he said he would be right back and told Imiear to "come on." Abdul-Latif exited through Hill's front door and got into the driver's seat of his girlfriend's Pontiac Grand Prix, which was parked right in front of Hill's house.

At approximately 1:37 p.m., [Appellant] arrived at the scene riding a bicycle. Imiear then went to stand next to [Appellant] near the driver's side of Abdul-Latif's car. Then Imiear went back inside Hill's house to ask Hill for a sweatshirt while [Appellant] remained near the driver's side of the vehicle. Hill brought Imiear a sweatshirt at the front door and Imiear walked out of Hill's house. At approximately 1:50 p.m., as Imiear was walking from the house toward the car, [Appellant] shot Abdul-Latif six times. [Appellant] then fled on his bicycle. Medics pronounced Abdul-Latif dead at the scene. Abdul-Latif had four gunshot wounds to his head and two to the back of the neck. Police collected six .380 caliber fired cartridge cases and one live cartridge at the scene.

Philadelphia police detectives then conducted an investigation of the murder. When Officer David Quaintance arrived on the scene, he noticed a surveillance camera on a nearby homeowner's property and recovered the video, which recorded Abdul-Latif's murder. Later, Officer Timothy Stephan, who worked patrol for nearly 8 years in the area where [Appellant] lived, identified [Appellant] as the shooter on the surveillance video.

On June 22, 2016, a warrant was issued for [Appellant's] arrest. Officers could not locate [Appellant], and therefore, Philadelphia's Homicide Fugitive Squad was tasked with finding him. After several months of unsuccessful searching, on November 17, 2016, the Homicide Fugitive Squad, now aided by the U.S. Marshalls, received an anonymous tip that [Appellant] was in Florida. On November 22, 2016, U.S. Marshalls arrested [Appellant] in Ocala, Florida.

Trial Court Opinion, filed 12/7/18, at 2-4 (footnotes and citations to transcripts omitted).

At the conclusion of trial, the jury convicted Appellant of the offenses indicated *supra*, and on May 11, 2018, the trial court sentenced Appellant to life in prison for his first-degree murder conviction, with no further penalty for the remaining convictions. On May 17, 2018, Appellant filed a timely, counseled post-sentence motion, which the trial court denied on August 24, 2018. This timely, counseled appeal followed on August 24, 2018, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved" (verbatim):

I.    Whether the Court erred when it permitted the lay opinions of Rasheeda Wright and Police Officer Timothy Stephan to be expressed to the jury that the images of the person in the video who shot and killed the decedent were the Appellant's?

II.    Whether the Court erred when during jury deliberations in response to a jury request to view the video of the shooting on a laptop computer it granted the request when the video was not presented to the jury or to any other witness on a laptop computer during the trial?

III.    Whether the Court erred in violation of the Appellant's due process and confrontation rights under the federal and state

constitutions when it permitted the video of the shooting to be viewed by the jury during deliberations on a higher resolution laptop computer when the video had not been presented to the jury or to any other witness on a laptop computer during the trial?

IV. Whether the adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice where the identification of the Appellant in the video was based upon a common human mannerism of touching one's head and face, where the video as presented at trial was of insufficient quality to make a positive identification, where the Appellant's brother possessed a motive to kill the victim based upon their mutual involvement in controlled substance distribution and where the Appellant and the victim were life long friends?

V. Whether the adjudication of guilt is based upon insufficient identification evidence where the video of the shooting upon which the identification was premised was of insufficient quality to prove beyond a reasonable doubt that the Appellant was the person who shot and killed the victim?

Appellant's Brief at 6.

In his first issue, Appellant contends that, in violation of Pennsylvania Rule of Evidence 701, the trial court erred in permitting Rasheed Wright and Police Officer Timothy Stephan to opine that the image of the person seen in the video, which was seized from a surveillance camera near the murder scene, depicted Appellant.[2]

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's

---

[2] Appellant filed a pre-trial motion *in limine* seeking to exclude the opinion identification testimony of Rasheed Wright, Officer Stephan, and Probation Officer James Hartnett. *See* Trial Court Opinion, filed 12/7/18, at 4. The trial court granted Appellant's motion as to Probation Officer Hartnett, but denied the motion as to Rasheed Wright and Officer Stephan. *Id.*

decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.

***Commonwealth v. Flamer***, 53 A.3d 82, 86 (Pa.Super. 2012) (quotations and quotation marks omitted).

Pennsylvania Rule of Evidence 701 states that in cases where a witness is not testifying as an expert, his or her opinion testimony must be limited to what is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 701." Pa.R.E. 701. "Generally, lay witnesses may express personal opinions related to their observations on a range of subject areas based on their personal experiences that are helpful to the factfinder." ***Commonwealth v. Berry***, 172 A.3d 1, 3-4 (Pa.Super. 2017) (citations omitted). With regard to lay opinion identification testimony, such "testimony is more likely to be admissible where the surveillance photograph is of poor or grainy quality, or where it shows only a partial view of the subject."[3] ***U.S.***

---

[3] The parties do not dispute that Ms. Wright and Officer Stephan testified as lay witnesses, as opposed to expert witnesses, when offering their identification testimony. Further, the parties do not dispute that the video is "of poor or grainy quality." ***U.S. v. Dixon***, 413 F.3d 540, 545 (6th Cir. 2005).

*v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005). *See U.S. v. Shabazz*, 564 F.3d 280 (3rd Cir. 2009).[4]

Here, Ms. Wright, who was the mother of Abdul-Latif, testified that she viewed the video of her son's murder, and she identified Appellant as the person on the bicycle, who shot her son. N.T., 5/8/18, at 213. She testified she had "no doubt in her mind[.]" *Id.* Ms. Wright testified she and Appellant's mother were "[c]hildhood best friends[,]" they bought houses near each other, and Appellant would "hang out" at her house with Abdul-Latif "[a]ll of the time." *Id.* at 198-200. Ms. Wright considered Appellant to be her nephew, although they were not blood-related, and Appellant had stayed at her house for about three weeks, with such staying ending approximately one month before Abdul-Latif's murder. *Id.* at 198, 207.

Ms. Wright explained she identified Appellant as being in the video based on his short, cropped haircut, as well as his mannerisms. *Id.* at 202, 208. Ms. Wright testified that Appellant tends to avoid eye contact, and he rubs his head while looking around a lot. *Id.* at 208.

Officer Stephan testified he has been a police officer for eleven years, and for eight of those years he was on patrol in the district where Appellant

---

[4] We note that we are not bound by these federal cases; however, we may rely on them to the extent we find them to be persuasive. *Commonwealth v. Arcelay*, 190 A.3d 609 (Pa.Super. 2018).

lived. N.T., 5/9/18, at 60. He testified he became very familiar with the people, including Appellant and his brother, Imiear, who lived on the 5000 block of Boudinot Street. *Id.* at 62-63. He indicated that, during his time on patrol, he had approximately ten interactions with Appellant, including two lengthy conversations. *Id.* at 63, 66. He testified that, during these interactions, he noticed Appellant had a "tic," in that he would rub his face, chin, and top of his head often. *Id.* at 65.

Officer Stephan testified that, since the shooting happened in his patrol area, a homicide detective asked him to view the video of the murder to determine whether he recognized any of the participants. *Id.* at 66-67. Officer Stephan testified he recognized Appellant in the video based, in part, on Appellant's mannerisms. *Id.* at 67-70.

Based on the aforementioned, the trial court concluded Ms. Wright's and Officer Stephan's identification opinions met the criteria of Pa.R.E. 701. Specifically, the trial court held that "both Officer Stephan and [Ms.] Wright were highly familiar with [Appellant's] appearance and mannerisms, and therefore, able to assist the jury in identifying the shooter in the video from their rational perceptions of the video."[5] Trial Court Opinion, filed 12/7/18, at 6. *See Commonwealth v. Spencer*, 639 A.2d 820 (Pa.Super. 1994)

_____

[5] We note the opinion testimony at issue was not based on scientific, technical, or other specialized knowledge. *See* Pa.R.E. 701.

(holding the witness's opinion that the gait of the robber and the gait of the appellant were similar was properly admitted under Pa.R.E. 701). We find no abuse of discretion, and therefore, there is no merit to Appellant's first issue.[6]

In his second issue, Appellant, citing to Pennsylvania Rule of Evidence 646, contends the trial court erred in granting the jury's request during deliberations to view the video of the shooting on a laptop computer. Appellant contends the jury should have been limited to viewing the video during deliberations in the same manner as it was viewed during trial, *i.e.*, on a large television monitor. Appellant suggests that "by permitting the jury to view the evidence through a different medium of presentation there was a likelihood that the jury skewed the importance of the surveillance video after viewing the sharper images on the laptop computer as compared to the images projected onto the large television monitor during trial." Appellant's Brief at 25.

The decision as to which exhibits may be taken out with the jury is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. **Commonwealth v. Hawkins**, 549 Pa. 352, 701 A.2d 492, 512 (1997). However, the trial court's discretion is not absolute, and Pa.R.E.

---

[6] In addition to Ms. Wright's and Officer Stephan's identification testimony, Mr. Hill made a statement to the police wherein he identified Appellant in a still photograph from the surveillance footage. N.T., 5/8/18, at 104. Also, at trial, viewing the video footage, Mr. Hill positively identified Appellant as the person by the victim's car. **Id.** at 107.

646 prohibits juries from having certain enumerated categories of exhibits during deliberations. Specifically, Pa.R.E. 646 relevantly provides the following:

**Rule 646. Material Permitted in Possession of the Jury**

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).

\*\*\*

(C) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646 (A), (C) (bold in original).

The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

*Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa.Super. 2012).

Here, the video, and more precisely the manner in which it was displayed during deliberations, is not specifically prohibited by Pa.R.Crim.P. 646(C). Thus, permitting the jury to view the video on a laptop computer during deliberations falls squarely within the discretion of the trial court. *See Hawkins*, *supra*.

In explaining the reasons it permitted the jury to view the video on the laptop computer, the trial court relevantly indicated the following:

[T]he video of the shooting was in evidence; not the medium through which it was shown. Because the entire crime was captured on video, it was entirely proper for the [c]ourt to permit the jury to view the video again to assist the jurors in determining if [Appellant] was the shooter depicted in the video.

[Appellant] had a full and fair opportunity to rigorously test the reliability of the video evidence at trial before the jury. The jury viewed the video during trial and [Appellant] had the opportunity to review any portions of the video he wished on cross-examination of several witnesses. Further, [Appellant] had the opportunity to cross-examine the officer who recovered the video surveillance footage (Officer David Quaintance), the three witnesses who identified [Appellant] in the video (Officer Timothy Stephan, Rasheeda Wright, and Walter Hill), and the detective who analyzed and processed the video surveillance footage (Detective Thorsten Lucke).

Moreover, the use of the laptop had only a *de minimus* effect on the presentation of the video….[E]ven in the opinion of defense counsel, to the extent the laptop was at all better than the television monitor, the picture was only "slightly more clear." There is nothing in the record to suggest that the questioning of the witnesses or the presentation of any of the other evidence in the case would have differed at all if the laptop had been used during the trial instead of the television monitor to play the video.

Accordingly, the [c]ourt did not abuse its discretion by permitting the jury to view the video of the shooting on a laptop computer [during deliberations].

Trial Court Opinion, filed 12/7/18, at 8.

We conclude the trial court did not abuse its discretion in permitting the jury to view the video on a laptop computer, as opposed to a large television monitor, during deliberations. ***See Barnett***, ***supra***. In any event, assuming, *arguendo*, the trial court erred, Appellant has further failed to demonstrate

that the manner in which the jury viewed the video, which had "only a *de minimus* effect" on the presentation of the video, prejudiced him to the extent that he is entitled to a new trial. ***See Commonwealth v. Strong***, 575 Pa. 433, 836 A.2d 884 (2003) (holding that any error in permitting the jury to view evidence during deliberations in violation of Pa.R.E. 646 is subject to a harmless error analysis). Accordingly, Appellant is not entitled to relief on this claim.

In his third issue, Appellant contends his due process and confrontation rights were violated when the trial court permitted the jury to view the video on a laptop computer, as opposed to a large television monitor, during deliberations. However, our review of Appellant's brief reveals that, although he set forth this issue in his "Statement of Questions Involved," Appellant has presented no specific argument with regard thereto. Accordingly, the issue is waived.[7] ***See*** Pa.R.A.P. 2119 (setting forth the appellant shall provide argument with citation to pertinent authorities); ***Commonwealth v. Bullock***, 948 A.2d 818 (Pa.Super. 2008) (finding claim abandoned when the appellant did not develop the claim in his brief).

---

[7] In any event, as the excerpt from the trial court's opinion set forth *supra* suggests, Appellant failed to demonstrate a violation of his due process or confrontation rights. ***See*** Trial Court Opinion, filed 12/7/18, at 8.

In his fourth issue, Appellant contends the jury's verdict is against the weight of the evidence.[8]  Specifically, Appellant contends the jury's reliance upon Ms. Wright's and Officer Stephan's identification testimony, based largely upon Appellant's mannerisms, was shocking.  *See* Appellant's Brief at 27.  He also contends the evidence revealed "Appellant and the victim were close and loved each other[,]" and Imiear, as opposed to Appellant, had a motive to kill Abdul-Latif, thus rendering the jury's verdict against the weight of the evidence.  Appellant's Brief at 27-28.

When considering challenges to the weight of the evidence, we apply the following precepts.  "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses."  *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted).  Resolving contradictory testimony and questions of credibility are matters for the finder of fact.  *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact.  *Talbert*, 129 A.3d at 545.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the

---

[8] Appellant challenged the weight of the evidence in his post-sentence motion. *See* Pa.R.Crim.P. 607(a).

- 12 -

post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence. ***See id.***

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id.*** at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Id.*** (quotation marks and quotation omitted).

Appellant requests that we re-weigh the evidence and assess the credibility of Ms. Wright's and Officer Stephan's identification testimony, a task that is beyond our scope of review. As the trial court indicated, the jury, as the finder of fact, had the duty to determine the credibility of the testimony and evidence presented at trial. Trial Court Opinion, filed 12/7/18, at 12. ***See Commonwealth v. Collins***, 70 A.3d 1245, 1251 (Pa.Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact"). As the trial court suggested, in the case *sub judice*, the jury viewed the surveillance video depicting the crime, observed Appellant in court, heard testimony related to Appellant's mannerisms, and heard the identification testimony of witnesses, who were well acquainted with Appellant prior to the

murder. The jury was free to weigh the evidence and determine whether Appellant was the shooter depicted in the video. *See Collins*, *supra*.

Moreover, the jury was informed of Appellant and Abdul-Latif's relationship, as well as Imiear's possible drug-related motive for killing Abdul-Latif. The jury was free to determine what, if any, effect this had as to Appellant's identity as the shooter. *See id.* Therefore, we conclude the trial court did not abuse its discretion in rejecting Appellant's weight of the evidence claim, and, thus, Appellant is not entitled to relief on this claim. *See Talbert*, *supra*.

In his final issue, Appellant contends the evidence is insufficient to sustain his conviction for first-degree murder.[9]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the

---

[9] Appellant did not challenge the sufficiency of the evidence as to his remaining convictions.

credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010) (citations omitted).

In the instant case, Appellant's sufficiency argument is specific in nature; to wit, he avers the evidence was insufficient to prove that he committed the murder. In light of Appellant's specific sufficiency claim, we need not conduct a thorough review of the evidence to determine whether it can support a finding that all of the elements for first-degree murder have been met. Rather, we will focus on the specific issue raised by Appellant: whether the evidence was sufficient to establish that Appellant was the perpetrator of the crime.

Here, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, we conclude the evidence sufficiently establishes that Appellant was the person who shot Abdul-Latif. As the trial court relevantly indicated:

Rasheed Wright and Officer Timothy Stephan identified [Appellant] as the shooter in the surveillance video. In addition, after the murder, Walter Hill made a statement to police wherein he identified [Appellant] in a still photograph from the surveillance footage. At trial, Hill also identified [Appellant] in the surveillance video. The jury also had the opportunity to make its own independent assessment of the video to determine the identity of the shooter.

Moreover, the Commonwealth presented substantial additional circumstantial evidence to corroborate the identification from the video. First, while Walter Hill did not witness the actual shooting, he told police that when he gave Imiear a sweatshirt at the front door of Hill's house, he saw [Appellant] with his bicycle

- 15 -

standing next to the driver's side door of the vehicle in which [Abdul-Latif] was sitting shortly before the shooting occurred. This was compelling circumstantial evidence that [Appellant] was the man depicted in the video shooting the decedent and then fleeing on a bicycle.

The Commonwealth's cell phone data analysis also provided substantial corroboration. It showed that Abdul-Latif exchanged several phone calls with [Appellant] on June 16, 2016, between 1:15 and 1:17 p.m., shortly before Abdul-Latif was murdered. In addition, cell site location analysis demonstrated that [Appellant's] cell phone was located in the area of [Appellant's] house when those calls were made, and moved to less than a mile west of the murder site five minutes after the shooting. Significantly, the cell phone data showed that [Appellant] made his last call to Abdul-Latif shortly before the murder, and never tried to reach him again thereafter, even though [Appellant] and Abdul-Latif were previously consistently in communication with each other. Of course, the killer would have known that there was no point to calling Abdul-Latif after the time of the murder.

Finally, [Appellant's] actions after the murder of Abdul-Latif were compelling evidence of [Appellant's] consciousness of guilt. First, [Ms.] Wright testified that [Appellant], who had known Abdul-Latif his entire life and considered him his cousin, did not attend Abdul-Latif's funeral. In addition, there was evidence that [Appellant] fled to a different state to avoid [apprehension] by law enforcement. Abdul-Latif's murder occurred on June 16, 2016, and a warrant for [Appellant's] arrest was issued on June 22, 2016. Detective Kevin Judge, a member of the Homicide Fugitive Squad, testified that even though his squad canvassed the city of Philadelphia and the surrounding region, they could not locate [Appellant]. He further testified that they enlisted the help of the U.S. Marshalls and published a wanted poster for [Appellant] in the Daily News on October 31, 2016. It was not until five months after the murder, on November 22, 2016, that [Appellant] was located and arrested in Ocala, Florida. Detective Judge testified that, after an investigation, he found that [Appellant] had no connection to Ocala, Florida. All of this was compelling evidence of [Appellant's] consciousness of guilt. *See Commonwealth v. Smith*, 378 A.2d 1239, 1243 (Pa.Super. 1977) [(*en banc*)] ("Generally when a person commits a crime and flees or conceals himself such conduct is evidence of a consciousness of guilt and may form the basis from which guilt may be inferred.").

- 16 -

Trial Court Opinion, filed 12/7/18, at 9-11 (citations to transcripts omitted).

We agree with the trial court's sound reasoning and find no merit to Appellant's sufficiency of the evidence claim.

For all of the foregoing reasons, we affirm Appellant's judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/19